**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Randy COLLIER, Defendant–
Appellant.**

No. 02–3081.

United States Court of Appeals,
Sixth Circuit.

July 2, 2003.

Before BOGGS, SUHRHEINRICH, and CLAY, Circuit Judges.

PER CURIAM.

Randy L. Collier appeals his convictions for bank fraud, in violation of 18 U.S.C. § 1344(2), and for making false statements to the Small Business Administration ("SBA"), in violation of 15 U.S.C. § 645(a). On appeal, Collier contends that the district court erred in: (1) denying his motion to dismiss the false statement count on the statute of limitations grounds; (2) disallowing testimony of Collier's bankruptcy counsel regarding Collier's absence of criminal intent; and (3) refusing to take judicial notice of facts contained in Collier's bankruptcy judgment. Collier also claims that cumulatively these errors were sufficiently prejudicial as to deny him a fair trial, in violation of the due process. We affirm.

## I

In April 1995, Collier, a sales manager for a pet food manufacturer, purchased in his personal capacity a pet store in Stow, Ohio, called Fins, Feathers & Furry Things (FFFT), from Phillip Dipane. The purchase price was approximately $275,000, of which $235,000 was in form of a personal note by Collier, secured by FFFT's inventory and fixtures. In this transaction. Collier was not represented by counsel, but he did have the advice of a CPA.

The following year Collier decided to seek a $100,000 loan from Fifth Third Bank in order to expand FFFT. On May 8, 1996, Collier submitted a Personal Financial Statement (PFS) to the bank, which did not list Collier's personal note as a

liability, but gave the value of FFFT as only $100,000. That figure was explained variously by Collier as the income that he expected to receive from FFFT over two years and by Collier's CPA as a rough estimate of the excess of FFFT's fair value over the outstanding part of Collier's personal note. Fifth Third Bank advised Collier that, prior to approval, it would require an SBA guarantee of the loan. On June 21, 1996, Collier submitted an SBA loan application to the bank. The application asks whether the applicant had ever been charged or convicted of a criminal offense and indicates that if the answer to that question is in the affirmative the applicant is ineligible for this type of SBA loan. Collier was ineligible as he had been convicted three years previously of minor handgun and prescription drug offenses. Collier claims that he considered the question irrelevant and therefore did not answer it on the application. However, the copy of Collier's application in the record answers the question in the negative in what appears to be the same style and pen as the other questions. The SBA loan application did list a debt to Dipane, collateralized by FFFT's inventory, but in an amount of less than $50,000. On August 5, 1996, Collier executed the SBA loan agreement and settlement sheet. The funds were disbursed to Collier the following day.

On July 23, 1997, Collier filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio. Fifth Third Bank challenged the discharge of the outstanding $80,000 of its loan to Collier under 11 U.S.C. § 523(a)(2)(B) (denying discharge of debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... use of a statement in writing ... (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable

for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive"). After a hearing, the bankruptcy court found Collier had made materially false statements to the bank with respect to his financial condition, meeting the first two elements of 523(a)(2)(B). However, the court found that the bank had failed to meet its burden of proof with respect to the reliance and intent elements. The court therefore discharged the debt. Collier's counsel during these proceedings was Betty Groner.

On July 25, 2001, Collier was indicted by a federal grand jury in the Northern District of Ohio for bank fraud, in violation of 18 U.S.C. § 1344(2), and making false statements to the SBA, in violation of 15 U.S.C. § 645(a). Collier's case proceeded to a jury trial. The district court denied his motion to dismiss the false statement count as outside the statute of limitations. The court partially granted Collier's motion, pursuant to Fed.R.Evid. 201, it to take judicial notice of the factual findings of the bankruptcy court. Collier was permitted to call Groner as an expert witness, under Fed.R.Evid. 702, regarding his mortgage amortization schedules, but was not permitted to also call her as a lay opinion witness, under Fed.R.Evid. 704, to give her opinion on whether Collier was sufficiently financially sophisticated to form the intent underlying the offenses charged. On October 24, Collier was convicted and subsequently sentenced to fourteen months of incarceration on each of the counts, to be served concurrently. Before us now is Collier's timely appeal.

**II**

Collier was convicted of making false statements to influence the SBA, in violation of 15 U.S.C. § 645(a).

Whoever makes any statement knowing it to be false, or whoever willfully overvalues any security, for the purpose of obtaining for himself or for any applicant any loan, or extension thereof by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security therefor, or for the purpose of influencing in any way the action of the Administration, or for the purpose of obtaining money, property, or anything of value, under this chapter, shall be punished by a fine of not more than $5,000, or by imprisonment for not more than two years, or both.

15 U.S.C. § 645(a) (1995). "[N]o person shall be prosecuted, tried, or punished under unless the indictment is found or the information is instituted within five years next after such offense *shall have been committed.*" 18 U.S.C. § 3282 (emphasis added). "The statute of limitations begins to run when each element of the crime has occurred and the crime is complete." *United States v. Crossley,* 224 F.3d 847, 859 (6th Cir.2000) (citing *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), and *United States v. Lutz,* 154 F.3d 581, 586 (6th Cir.1998)).

Collier was indicted on July 25, 2001, placing the statute of limitations cut-off date at July 25, 1996. The relevant elements of the false statement offense under consideration here are (1) a false statement (2) made knowingly (3) for the purpose of obtaining an SBA loan. 15 U.S.C. § 645(a). All of these elements are present or absent at the time the statement is made. Therefore, the offence has occurred, or failed to do so, at this time. Collier submitted his PFS, omitting his personal note, and his SBA loan application, containing the false statement regarding his criminal record, before the cutoff date, and the recipients received these documents before that date. Hence, all elements of the offense were present and the offense completed, more than five years before Collier was indicted. The statute of limitations bars prosecution of Collier for making the statements in the PFS and the SBA.[1]

At trial, there was some contention that § 645(a) fell within the "continuing offense" exception to the statute of limitations. However, a crime should not be classified as a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie,* 397 U.S. at 115. There is nothing in the text of § 645(a) that even suggests continuing offense treatment. Nor is the false statement offense of a type suggesting continuing offense treatment. Status crimes can be continuing offenses. *See, e.g., United States v. Newman,* 134 F.3d 373 (6th Cir.1998) (unpublished) (holding gun possession to be a continuing offense); *United States v. Bailey,* 444 U.S. 394, 413, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (holding status as escapee to constitute a continuing offense). So can crimes of omission. *See, e.g., United States v. Del Percio,* 870 F.2d 1090 (6th Cir.1989) (holding concealment of bankruptcy assets and failure to file a foreign agent registration statements to be continuing offenses). However, § 645(a) is a straightforward crime of commission. Moreover, "criminal limitations statutes are to be liberally interpreted in favor of repose." *Toussie,* 397 U.S. at 115 (quoting *United States v. Scharton,* 285 U.S. 518, 522, 52 S.Ct. 416,

---

**1.** Prosecution for making the false PFS statement was also barred by the fact that it occurred before Collier appears to have been aware that an SBA loan application was going to be made. Therefore he could not have made the statement *for the purpose of obtaining an SBA loan.*

76 L.Ed. 917 (1932)). There is no reason to construe § 645(a) as a continuing offense and we decline to do so.

Nevertheless, Collier was properly convicted because he did execute and submit two documents, the loan agreement and the settlement sheet, within the limitations period. His indictment lists both of these documents and his false statement count incorporates these allegations. While neither document contains any new falsehood, both incorporate the falsehoods of the earlier documents by reference. The loan agreement stated that it was "subject to ... the representations made by the Borrower in its loan application." As the application is false, so is the agreement. In addition, on the settlement sheet Collier "certfie[d] that ... there ha[d] been no substantial adverse change in financial condition, organization, operations or fixed assets since application for this loan was filed" and "that there are no liens or encumbrances against the real or personal property securing the loan except those disclosed in the application for the loan." As all undisclosed financial conditions regarding FFFT had existed before the application was filed, the former was technically true. But Collier never disclosed his promissory note's collateralization by

FFFT's inventory on his loan application. The loan application does list a loan from Dipane with an outstanding balance of $ 43,000. But as the outstanding amount of the promissory note was over $200,000, this cannot qualify as a disclosure. Hence, the loan application did not fully disclose all liens and the settlement sheet's certification that it had was false. Both the loan agreement and the settlement sheet form valid bases for a § 645(a)[2] violation.[3]

### III

■■■ Groner, Collier's attorney during his bankruptcy proceedings, testified for him as an expert witness regarding the financial circumstances involved. Collier also attempted to introduce Groner's opinion testimony regarding Collier's lack of financial understanding and hence inability to form the criminal intent to deceive, which had been the basis of Collier's successful defense of his discharge in the bankruptcy proceedings. The district court excluded Groner's testimony regarding Collier's state of mind, based on Fed. R.Evid. 704(b).[4] Collier contends that the ruling was in error because he was not attempting to call Groner as an expert witness on the issue of his state of mind,

2. Collier contends that because § 645(f) gives special consideration to misrepresentation in a particular narrow class of certification and the certification in the settlement sheet is not within that class, it is outside the coverage of § 645(a) as well. This argument is without merit. If Congress had intended to exempt all "certifications" from any requirement of truthfulness, when it added § 645(f) as part of the Business Opportunity Development Reform Act of 1988, Pub. L. No. 100–656, it surely would not have done it so obliquely.

3. The dissent notes that the indictment alleged older false statements outside the limitations period, as well as newer false statements, inside the limitation period, and that Collier was immune from being convicted for making the older false statements. We agree.

However, the newer statements were not inherently false; they were only false because they incorporated the falsehoods from the older statements. Therefore to allege the falsehood of the newer statements, the drafters of the indictment were well-advised to allege the falsehood of the older statements. Doing so did not render the indictment infirm.

4. "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." Fed. R.Evid. 704(b).

but only as a lay witness who may testify as to ultimate facts. Fed.R.Evid. 704(a).[5] "We review evidentiary rulings of district courts for abuse of discretion." *Jamison v. Collins,* 291 F.3d 380, 387 (6th Cir.2002).

Collier attempted to introduce evidence regarding a question of notorious difficulty, "What was in defendant's mind as he committed the underlying acts?" To answer this question, he offered a witness, Groner, already known to the jury to be in two categories of special authority, lawyer and expert. The rules of evidence recognize the danger that a jury might give excessive weight to words coming from one so qualified in at least two ways: the rule against expert testimony on the mental state constituting an element of the crime charged, *see* Fed.R.Evid. 704(b), and the rule against advocates stating their personal opinion to the jury, *see, e.g., TWM Mfg. Co. v. Dura Corp.,* 722 F.2d 1261, 1267 (6th Cir.1983) (upholding trial court's discounting of expert opinion testimony by attorney associated with defendant's counsel); Restatement (Third) of the Law Governing Lawyers § 107(1) (2000) ("In representing a client in a matter before a tribunal, a lawyer may not, in the presence of the trier of fact ... state a personal opinion about the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused."). Groner's testimony here did not quite fall within the ambit of either rule. At that point her testimony was not based on "scientific, technical, or other specialized knowledge," so it was not expert testimony under Fed.R.Evid. 704(b). She was not an advocate at Collier's criminal trial, so it was not within the general prohibition of party attorney testimony. However, the rationale underlying both rules, that a jury would

tend to credit such testimony more than is warranted, still applies. Allowing Groner to testify could easily have confused the jury regarding the proper weight to assign her testimony. Where evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," exclusion is appropriate. Fed.R.Evid. 403. *See also United States v. Calhoun,* 544 F.2d 291, 294–96 (6th Cir.1976) (reversing admission of marginally relevant, but prejudicial, lay opinion testimony under Fed. R.Evid. 403). Therefore it was not an abuse of discretion for the district court to exclude Groner's opinion testimony on the issue of defendant's state of mind at the time of the offense.

## IV

■ Collier also appeals the district court's refusal to take judicial notice of some parts of the bankruptcy court judgment under Fed.R.Evid. 201. "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). "In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." Fed.R.Evid. 201(g).

We first note that "[a]lthough the rule is phrased in mandatory language, courts of appeals review a district court's refusal to take judicial notice for abuse of discre-

---

**5.** "Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable be-

cause it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a).

tion." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir.2002) (citing *Waid v. Merrill Area Pub. Sch.*, 130 F.3d 1268, 1272 (7th Cir.1997) and *York v. AT&T Co.*, 95 F.3d 948, 958 (10th Cir.1996)). Courts may consider discrete parts of the materials submitted for judicial notice separately. *United States v. Garland*, 991 F.2d 328, 332–33 (6th Cir.1993) (holding that courts are not limited to recognizing a foreign judgment entirely or not at all and that courts may recognize discrete components of a foreign judgment (citing *Ackermann v. Levine*, 788 F.2d 830, 844 (2d Cir. 1986))).

The district court did not err in refusing to take judicial notice of the judgment beyond acknowledgment that the proceeding had taken place. Some of the finding of fact contained within the judgment, such as that Collier lacked the criminal intent to defraud, certainly were relevant to his criminal prosecution. But these facts were capable of reasonable dispute as demonstrated by the prosecution disputation thereof and the jury's finding to the contrary.[6] Therefore they were not subject to judicial notice and the district court did not abuse its discretion in excluding these parts of the bankruptcy court's judgment. *Cf. United States v. Bonds*, 12 F.3d 540, 553 (6th Cir.1993) ("While defendants' request that we merely take judicial notice of this report pursuant to Federal Rules of Evidence 201(f) and 104(a) has a certain facial appeal, Federal Rule 201 permits a court to take judicial notice only of facts 'not subject to reasonable dispute ...' Fed.R.Evid. 201(b). There is no dispute that the [report] exists, but there is considerable dispute over the significance of its contents.").

Collier cites *Garland* for the proposition that courts *must* take judicial notice of the judgment of another court, including all facts and opinion therein. Collier misconstrues *Garland*. In that case, Garland was convicted of one count of interstate fraud arising out of a fraudulent cocoa bean transaction. *Garland*, 991 F.2d at 329. Subsequently, the National Public Tribunal of Ghana convicted two Ghanians of defrauding Garland by making false representations concerning the same cocoa bean transaction. *Id.* at 332. We took judicial notice of the "existence of the judgment and the fact that the Ghana criminal court has made detailed findings of fact on issues relevant to the case at hand." *Ibid.* However, we specifically noted that we did "not judicially notice the truth of the statements contained in the Ghana judgment because some of these facts may remain in dispute." *Ibid.* Here, the trial court did take judicial notice of the bankruptcy judgment as evidence of the proceeding, as well as several facts from that proceeding. However, just as in *Garland*, it was not required to take judicial notice of the truth of the statements within the judgment because they were subject to dispute. In *Garland*, the foreign conviction itself, beyond the truth of the findings, substantiated Garland's lack of intent to defraud. In contrast, Collier sought to have the bankruptcy court's finding with regard to his intent to defraud judicially noticed to prove the truth of this same issue in the criminal proceeding. In short, the district court did not abuse its discretion when it failed to notice the findings of the bankruptcy court judgment because such findings were offered for the truth of the matter asserted in the judgment and were disputable under Fed. R.Evid. 201.

---

6. The conclusion would be different if the United States had been a party to the earlier proceeding. In that circumstances, the doctrines of res judicata might have barred the United States entirely from disputing the findings of fact.

## V

Having rejected all the specific assignments of error, we *a fortiori* reject the claim that the trial as a whole was sufficiently unfair as to violate due process. Therefore, we **AFFIRM** the judgment of the district court.

CLAY, Circuit Judge, dissenting.

Defendant was charged and convicted in a single-count indictment of violating 18 U.S.C. § 645(a) for knowingly making "one or more" false statements. Because some of the completed false statements alleged in the indictment and considered by the jury fell within the five-year statutory period, while some of the completed false statements alleged in the indictment and considered by the jury fell outside the statutory period, the indictment suffered from a fatal defect inasmuch as it improperly allowed for the jury to convict Defendant based on a single false statement made outside the statutory period. I therefore would reverse the district court's order denying Defendant's motion to dismiss the indictment as untimely, and respectfully dissent.

There are three critical points to recognize for a proper understanding of this case. First, Defendant was charged in a single-count of violating § 645(a), and the indictment expressly states that the conduct for which Defendant could be found liable for this crime includes that which occurred "[o]n or about May 8, 1996, through on or about August 5, 1996," based on allegations that Defendant "knowingly made and caused to be made *one or more* false statements, in that the defendant prepared and executed a loan application, a loan agreement, a settlement sheet, and supporting documents, which concealed and falsely represented material information relative to the defendant's background and financial condition." (J.A. at 13 (emphasis added).) The second critical point is that the jury instructions as to the § 645(a) crime mirrored the language of the indictment, and listed the first element of the crime that the government had to prove beyond a reasonable doubt being that Defendant "made *a* false statement." (J.A. at 31 (emphasis added).) And, finally, the third critical point is that the jury verdict form as to the § 645(a) crime simply provided that the jury found Defendant guilty "of the offense of Making *a* False Statement as charged in Count 2 of the Indictment in violation of Title 15, United States Code, Section 645(a)." (J.A. at 114 (emphasis added).)

With these critical points in mind, it becomes clear under the law that Defendant's July 25, 2001 indictment should have been dismissed as untimely. A five-year statute of limitations applies to a § 645(a) crime and, generally speaking, for any given crime, "[t]he statute of limitations begins to run when each element of the crime has occurred and the crime is complete." *United States v. Crossley*, 224 F.3d 847, 859 (6th Cir.2000) (citing *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970); *United States v. Lutz*, 154 F.3d 581, 586 (6th Cir.1998)). The elements that the government must prove beyond a reasonable doubt in order to secure a conviction for a crime under § 645(a) are: 1) a statement made by the defendant; 2) that he knows to be false or a willful overvaluation of a security; 3) for the purpose of obtaining a loan, or extension thereof by renewal or deferment of action; influencing in any way the action of the SBA; or obtaining money, or anything of value, under the Act. *United States v. Notarantonio*, 758 F.2d 777, 781 & 783 (1st Cir.1985) (expressly noting that the prohibited purposes of the third element are alternative conditions, "each independently sufficient to violate the statute when combined with a false statement made with knowledge of that falsity").

The majority concludes and the government appears to concede that Defendant's conduct met all of the elements of a completed § 645(a) crime when Defendant "completed, and caused to be completed, and executed a Confidential Financial Statement, dated May 8, 1996, which statement falsely represented the nature and extent of the defendant's indebtedness by concealing the existence of substantial debt owed on an outstanding promissory note in the amount of $234,909.37, dated April 1, 1995" (J.A. at 11), and when Defendant "completed, and caused to be completed, and executed an Application for Business Loan (up to $100,000.00), dated June 21, 1996, which contained false material information, and which concealed material information, relative to the defendant's background and true financial condition." (J.A. at 11–12.)

Inasmuch as these completed crimes would make the five-year statutory cut-off date May 9, 2001, or arguably June 22, 2001 at the latest, the July 25, 2001 indictment charging Defendant with a single count of violating § 645(a), and delineating this conduct as that giving rise to the charge, was untimely. The majority holds that despite the inclusion of these untimely false statements, the indictment was timely in any event because two of the other false statements alleged in the indictment occurred within the five-year period. However, the majority's holding fails to consider that the indictment charged Defendant in a single count of making "one or more false statements," and fails to consider that neither the jury instructions nor the verdict form in any way provided a mechanism for determining on which of the false statements the jury based its guilty verdict–those falling within the statutory period or those falling outside the statutory period. Even assuming *arguendo* that two of the false statements were made during the statutory period, there is no way to determine that it was either or

both of those timely statements were included in the conduct upon which the jury based its guilty verdict.

In addition, the majority misinterprets the point made by the dissent when, in footnote 3 of its opinion, the majority contends that the inclusion of the prior false statements did not render the indictment defective because information of the prior false statements was necessary to demonstrate the wrongfulness of the latter false statements. It is not the inclusion of the prior false statements standing alone that makes the indictment defective. It is the fact that each of the untimely prior false statements—that made on May 8, 1996, and that made on June 21, 1996—constituted a separate and completed crime under § 645(a), along with the fact that the indictment charged Defendant in a single count with making "one or more false statements," that renders the indictment defective inasmuch as there is no way of determining whether the jury based their guilty verdict solely upon on either or both of these untimely complete crimes. If the false statements made on May 8, 1996 and June 21, 1996, did not in themselves constitute completed § 645(a) crimes, then the inclusion of these acts in the indictment for the purpose of making the latter false statements completed acts would not render the indictment defective. However, as noted, the majority as well as the government seem to concede that these untimely statements were completed § 645(a) crimes, and the jury may very well have improperly based their guilty verdict solely upon these untimely events.

The government's argument that these false statements are akin to mailings in a mail fraud case such that Defendant may be held responsible for every false statement just as a mail fraud defendant may be held responsible for every mailing, fails to consider that Defendant was not

charged in separate counts. The government may be correct to the extent that it has been found that "[w]here false statements are made in distinct and separate documents requiring different proof as to each statement, the filing of each false document constitutes a crime[;]" however, the government's argument fails to consider that under such circumstances "each filing may be alleged in a separate count of the indictment." *United States v. Guzman*, 781 F.2d 428, 432 (5th Cir.1986) (interpreting 18 U.S.C. § 1001, which makes it a crime to knowingly and willfully make a false representation of material fact to a United States agency). The government's argument might have been persuasive in this case had the dates of the various infractions been charged in separate counts, or, alternatively, if all of the dates in question had come within the statutory period.

It may be true that the district court did not consider the jury instructions or the verdict form when adjudicating Defendant's motion to dismiss the indictment; however, review of these documents simply serve to demonstrate the patent defect in the single count indictment as charged. That is, standing alone, the indictment should have been dismissed as untimely because it charged Defendant in a single count of making "one or more false statements" and two of the false statements upon which the count was based were made outside the five-year statutory period. Thus, as charged in this single count, the government improperly sought to convict Defendant for conduct that fell outside the statutory period, and based upon the posture of this case, it is impossible to determine whether the jury's verdict was based solely on such conduct.

I therefore would reverse the district court's order denying Defendant's motion to dismiss the indictment as untimely under the five-year statute of limitations, thereby obviating the need to address Defendant's other allegations of error.