*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0037p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 06-4473

RAYMOND L. GRENIER, and DELTA EQUITY
SERVICES CORP.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 06-00346—James S. Gwin, District Judge.

Argued: October 23, 2007

Decided and Filed: January 22, 2008

Before: MERRITT and CLAY, Circuit Judges; COX, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Justin J. Roberts, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for
Appellant. Allison D. Burroughs, NUTTER, McCLENNEN & FISH, Boston, Massachusetts, for
Appellees. **ON BRIEF:** Christian H. Stickan, ASSISTANT UNITED STATES ATTORNEY,
Cleveland, Ohio, for Appellant. Allison D. Burroughs, NUTTER, McCLENNEN & FISH, Boston,
Massachusetts, Robin E. Harvey, BAKER & HOSTETLER, Cincinnati, Ohio, for Appellees.

_____

## OPINION

_____

CLAY, Circuit Judge. The government appeals from the district court's order dismissing
on statute of limitations grounds the indictments of Defendants Raymond L. Grenier and Delta
Equity Services Corp. for violation of 18 U.S.C. § 1001 and 18 U.S.C. § 2. For the reasons that
follow, we **AFFIRM** the district court's dismissal of Defendants' indictments.

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by
designation.

## STATEMENT OF FACTS

### A.     Substantive Facts

Raymond Grenier and Delta Equity Services Corp. ("Delta") sold securities through licensed securities sales representatives and agents in various states. In 1997 the Securities and Exchange Commission ("SEC") began investigating Grenier's and Delta's lack of supervision of a group of Maryland and Ohio brokers who had defrauded investors and misappropriated money through the fraudulent offer and sale of unregistered securities. On July 10, 2001, after the SEC informed Defendants that it was preparing to take an enforcement action against them, Defendants, through counsel, faxed an 18-page "*Wells* submission"[1] letter to the SEC. This letter included a settlement proposal. On the same day, the original letter was mailed by overnight courier, and the SEC received it on July 11, 2001. The mailed document included an additional page, a notarized waiver dated July 10, 2001 and signed by Raymond Grenier as president of Delta and individually. On February 21, 2002, the SEC censured and fined both Grenier and Delta and imposed other sanctions upon them.

### B.     Procedural History

In an indictment filed on July 11, 2006, a federal grand jury alleged that from 1997 through on or about July 13, 2001, Grenier and Delta had knowingly and wilfully concealed and covered up a material fact regarding securities violations by means of tricks, schemes, and devices and had knowingly and willfully made a false writing, specifically a letter, to the SEC that contained fraudulent material statements. The indictment set forth ten allegedly false and fraudulent statements included in the document sent to the SEC. The indictment alleged that these statements minimized Defendants' knowledge and responsibility for securities violations. Defendants were charged with violating 18 U.S.C. § 1001 and 18 U.S.C. § 2.

Defendants filed a joint motion to dismiss the indictment, pursuant to Fed. R. Crim. P. 12(b)(2), on the ground that the indictment was returned one day outside of the five-year statute of limitations because the alleged false statements were contained in the *Wells* submission sent to the SEC on July 10, 2001. The government opposed the motion and argued that Defendants' crime was not complete until July 11, 2001 because the SEC lacked jurisdiction over the settlement proposal until July 11, 2001 when it received the signed authorization that was required by SEC regulations. After conducting a hearing, the district court entered an order granting the motion to dismiss on September 5, 2006. The government filed a motion for reconsideration, which was denied. The government filed a notice of appeal of the denial of the motion for reconsideration on October 23, 2006.

## DISCUSSION

### A.     Preservation of the Issue

Defendants claim that the only issue before us is whether the district court abused its discretion in denying the government's motion for reconsideration since the government appealed only the order denying reconsideration. (Def.'s Br. 11.) However, Defendants' argument is meritless since this Circuit's precedent clearly establishes that "a notice of appeal that names only a post-judgment decision may extend to the judgment itself if it can be reasonably inferred from the notice of appeal that the intent of the appellant was to appeal from the final judgment and it also

---

[1] During an SEC investigation, the party whose activities are being investigated may submit a *Wells* statement that sets forth the party's "interests and position in regard to the subject matter of the investigation." 17 C.F.R. § 202.5(c) (2007).

appears that the appellee has not been misled." *Harris v. United States*, 170 F.3d 607, 608 (6th Cir. 1999) (internal quotation marks omitted) (quoting *Peabody Coal Co. v. Local Union Nos. 1734, 1508 and 1548*, 484 F.2d 78, 81 (6th Cir. 1973)). *Accord Sanabria v. United States*, 437 U.S. 54, 68 n.21 (1978); *Caudill v. Hollan*, 431 F.3d 900, 905-06 (6th Cir. 2005).

Although the language of *Harris* suggests that the underlying basis for an appeal must be apparent from the notice of appeal, courts have relied upon briefs and other subsequent filings to infer the intent of the appellant. *Sanabria*, 437 U.S. at 68 n.21; *Boburka v. Adcock*, 979 F.2d 424, 426 (6th Cir. 1992).[2] In this case, we may review issues relating to the district court's grant of Defendants' motion to dismiss because the government's brief put Defendants on notice that the appeal regarded not only the order denying reconsideration but also the order granting Defendants' motion to dismiss.

## B.    Standard of Review

The standard of review to be applied for a motion to dismiss an indictment is somewhat unclear. *United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004). When reviewing a district court's disposition of a motion to dismiss an indictment based on findings of fact, we have generally applied either an abuse of discretion standard or a clear error standard. *United States v. Butler*, 297 F.3d 505, 512 (6th Cir. 2002) (reviewing a motion to dismiss based on a factual determination for clear error); *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001) (noting that the court has used both a clear error and an abuse of discretion standard to evaluate the dismissal of indictments based on findings of prosecutorial vindictiveness). When reviewing the district court's legal conclusions in the motion to dismiss context, we have generally undertaken *de novo* review. *United States v. Philp*, 460 F.3d 729, 732 (6th Cir. 2006) (reviewing *de novo* denial of motion to dismiss on legal grounds); *United States v. Martinez-Rocha*, 337 F.3d 566, 569 (6th Cir. 2003) (noting that the Sixth Circuit reviews a denial of a motion to dismiss involving questions of law *de novo*); *In re Ford*, 987 F.2d 334, 339 (6th Cir. 1992) (reviewing *de novo* denial of a motion to dismiss on the ground of double jeopardy).

However, we have not always been consistent in determining the standard of review to apply to district court dispositions of motions to dismiss. *Compare, e.g.*, *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001) (reviewing *de novo* disposition of motion to dismiss indictment based on the government's failure to preserve exculpatory evidence), *with United States v. Cody*, 498 F.3d 582, 589 (6th Cir. 2007) (reviewing for clear error disposition of motion to dismiss indictment based on the government's failure to preserve exculpatory evidence). We have consistently reviewed motions to dismiss indictments on statute of limitations grounds *de novo*, although we have adopted different rationales for this practice. *See United States v. Watford*, 468 F.3d 891, 908 (6th Cir. 2006); *United States v. Grenoble*, 413 F.3d 569, 572 (6th Cir. 2005); *United States v. Del Percio*, 870 F.2d 1090 (6th Cir. 1989). Therefore, *de novo* review is appropriate in this case.

## C.    Analysis

Defendants were prosecuted under 18 U.S.C. § 1001 and 18 U.S.C. § 2. The crime of making false statements to the federal government is defined in 18 U.S.C. § 1001, which imposes criminal liability for a person who

---

[2] The cases Defendants cite to support their position are inapposite. In both *Basmadjian v. United States*, 173 F.3d 854 (6th Cir. 1999) (unpublished table opinion), and *United States v. Lewis*, 166 Fed. Appx. 803 (6th Cir. 2006) (unpublished), the appellants filed an untimely motion for reconsideration that failed to toll the period for appealing the underlying order. As a result, the court in these cases refused to hear the appeal of the underlying order because it was time-barred.

in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

(1)     falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2)     makes any materially false, fictitious, or fraudulent statement or representation; or

(3)     makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

18 U.S.C. § 1001(a) (2000).  Any person who causes someone else to commit a federal offense is punishable as a principal under 18 U.S.C. § 2.  The applicable statute of limitations for prosecutions brought under 18 U.S.C. § 1001 is five years.  18 U.S.C. § 3282 (2000).  The statute of limitations begins to run when a crime is complete, that is, when each element of the crime charged has occurred.  *United States v. Lutz*, 154  F.3d 581, 586 (6th Cir. 1998).

The government presents a variety of rationales for finding the indictment of Defendants timely.  The government's argument rests on claims that (1) two separable offenses were committed by the faxing and the mailing of submissions, including false statements to the SEC; and (2) Defendants' offense was not complete until the SEC received the mailed submissions on July 11, 2001.

### 1.     The mailing and faxing of the false statements did not constitute two distinct crimes

The government claims that the indictment of Defendants on July 11, 2006 fell within the five-year statute of limitations because the document mailed to the SEC and received on July 11, 2001 "constituted a distinct violation" of 18 U.S.C. § 1001. (Govt.'s Br. 13.) The mailed document differed from the document faxed and received on July 10, 2001 in that the mailed document included a signed waiver page.  The mailed document contained no additional false statements, and the waiver page did not explicitly incorporate the false statements in the earlier pages.[3]  In support of its claim, the government cites *United States v. Collier*, 68 Fed. Appx. 676 (6th Cir. 2003) (unpublished), in which a defendant made false statements for which prosecution would have been time-barred and later made statements reaffirming the earlier false statements.  A divided panel of this Court held that the indictment was timely because the statute of limitations had not expired for the later statements and that the incorporation of the earlier false statements made the later statements actionable as violations of § 1001.  *Id.* at 681.  The instant case is distinguishable from *Collier* because the previously submitted false statements were not incorporated by reference in the signed waiver submitted by Defendants.

The government also cites cases in which the same false statement appearing on different documents gave rise to indictments for multiple offenses.[4]  However, in each of these cases, the

---

[3] The waiver stated:

In connection with the settlement offer contained in the Wells Submission dated July 10, 2001 with respect to The Keating Advisory Group (P-234), Raymond L. Grenier and Delta Equity Services Corporation each hereby acknowledge their waiver [sic] of those rights specified in Rule 240(c)(4) and (6) [17 C.F.R. Sections 201.240(4) and (5)].

[4] In this case only one count of submitting false statements was charged.  The government  argues that this count referred to the making of false statements in the mailed submission and not to the faxed submission.  The government contends, "[a]lthough the defendants might have been indicted for the 18-page faxed 'Wells submission,' despite the absence of a signed authorization to consider a settlement offer, the separate mailing of the false 'Wells submission' containing a valid signed settlement offer constituted a distinct violation as long as the indictment was

documents concerned were much less closely related than the documents at issue in this case.  In *United States v. Miranne*, 688 F.2d 980 (5th Cir. 1982), photocopies of a false statement were used for forty-two separate loans, each secured by a different piece of property.  In *United States v. Guzman*, 781 F.2d 428 (5th Cir. 1986), the same false information was entered in two different documents in an application for federal benefits.  In *Guzman*, the Fifth Circuit explained its test for determining whether a false statement under § 1001 was separate or distinct.  The court held that "[w]here false statements are made in distinct and separate documents requiring different proof as to each statement, the filing of each false document constitutes a crime."  *Id.* at 432.

The government claims that the factor that distinguishes the mailed documents from the faxed documents for the purposes of § 1001 is the expansion of the SEC's jurisdiction caused by the receipt of the mailed submission.  (Govt.'s Br. 13-14.)  SEC regulations prohibit the agency from considering a settlement offer without the receipt of an original document with manual signatures.  17 C.F.R § 201.151(a) (2007) ("Filing with the Commission may be made by facsimile transmission if the party also contemporaneously transmits to the Commission a non-facsimile original with a manual signature.").  Defendants' submission served two purposes, constituting both a *Wells* submission and a settlement offer.  Although the SEC could consider the *Wells* submission as soon as it was faxed, the signed waiver included with the mailed submission allowed the SEC to act upon Defendants' settlement offer.  The government's argument implies that the SEC had no jurisdiction over the settlement offer until it received the mailed documents, and thus the violation of § 1001 was not complete until July 11, 2001.  (Govt.'s Br. 14.)  This argument is contrary to courts' interpretation of the term "jurisdiction" as used in 18 U.S.C. § 1001.

The Supreme Court has emphasized that "the term 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001."  *United States v. Rodgers*, 466 U.S. 475, 480 (1984) (quoting *Bryson v. United States*, 396 U.S. 64, 70 (1969)).  It has held that "a department or agency has jurisdiction, in this sense when it has the power to exercise authority in a particular situation."  *Id.* at 479.  We have held that "when the federal agency has power to exercise its authority, even if the federal agency does not have complete control over the matter," the matter is within the agency's jurisdiction. *United States v. Shafer*, 199 F.3d 826, 829 (6th Cir. 1999).  Under this conception of jurisdiction, the argument that the SEC did not have jurisdiction over the settlement offer because it could not take a particular action regarding it lacks merit.  The documents sent by Defendants concerned a continuing investigation being conducted by the SEC.  The expansion of the SEC's jurisdiction by the receipt of the mailed submission does not negate the fact that the false statements were made regarding a matter within the jurisdiction of the SEC as of July 10, 2001.  The crime was thus complete at this point, and no separate crime was established by the SEC's receipt of the waiver on July 11, 2001.

**2.    For the purposes of 18 U.S.C. § 1001, the date Defendants' mailed submission was received by the SEC is irrelevant**

The government argues that the applicable date to determine when the statute of limitations begins to run for a violation of 18 U.S.C. § 1001 is not the date a false statement is made but instead the date it is received by the federal agency involved.  (Govt.'s Br. 15.)  The government asserts that Defendants' "use" of the false statement continued at least until the SEC received it and that since § 1001 prohibits both the making and the use of false statements, Defendants' crime was not complete on July 10, 2001.  (Govt.'s Br. 15.)  The cases the government cites for this proposition do not support this assertion.

---

timely as to that submission." (Govt.'s Br. 13.)

We undertook a detailed analysis of when the statute of limitation begins to run for a violation of 18 U.S.C. § 1001 in *United States v. Lutz*, 154 F.3d 581. In *Lutz* a mortgage broker submitted federal loan applications that contained false statements to a private lending institution for approval before sending approved loan applications to the federal Department of Housing and Urban Development ("HUD"), which provided mortgage insurance. *Lutz*, 154 F.3d at 586. More than five years after Lutz submitted loan applications to the private lender but less than five years after she submitted the approved applications to HUD, Lutz was indicted for violating § 1001. *Id.* We held that Lutz's prosecution was timely. *Id.* When she submitted the loan applications to the private lender, the jurisdiction element of 18 U.S.C. § 1001 had yet to be satisfied because "HUD had no authority over the lending institution at this point with regard to whether or not the institution would accept the loan." *Id.* at 586-87. Lutz did not violate § 1001 until the loan applications were submitted to HUD because her crime was not complete until the matter was in the jurisdiction of the federal government. *Id.* at 587. In reaching this conclusion, we cited with approval *United States v. Smith*, 740 F.2d 734, 736 (9th Cir. 1984), in which a violation of § 1001 was held to be complete when the false statement was submitted to the government and not when it was received by the government. *Lutz*, 154 F.3d at 586. The holding in *Lutz* is consistent with *Smith* and makes clear that the crucial date for statute of limitations purposes is not the date of receipt but the date upon which the government obtains jurisdiction.

To support its assertion that the statute of limitations begins to run upon receipt by the federal government, the government cites *United States v. Crossley*, 224 F.3d 847 (6th Cir. 2000), which is completely inapposite to the case at hand. *Crossley* dealt with a mail fraud prosecution, and since the statute prohibiting mail fraud provides that this crime can be committed by receiving fraudulent documents, 18 U.S.C. § 1341 (2000), we found that the statute of limitations in a mail fraud prosecution for receiving a fraudulent document begins to run on the date of receipt. *Crossley*, 224 F.3d at 859. There is no such provision regarding the date of receipt in 18 U.S.C. § 1001. In fact, a crime under § 1001 could be complete even if the federal agency never received the false statement. *United States v. Gibson*, 881 F.2d 318, 322 (6th Cir. 1989). *See United States v. Dunne*, 324 F.3d 1158 (10th Cir. 2003) (holding that accountant's violation of § 1001 was complete when he submitted a report to his client and not when it was mailed to SEC). The government's argument is supported indirectly by *Collier* (*see* Section 1 above) because in support of our conclusion that Collier's prosecution was timely, we noted that the documents were received within the statute of limitations period. *Collier*, 68 Fed. Appx. at 680. However, an oblique reference to the significance of the date of receipt in an unpublished case is not enough to surmount the weight of contrary precedent.

The government also asserts that the date Defendants completed the crime was July 11, 2001 because Defendants' scheme had not run its course until that time. (Govt.'s Br. 18.) To the extent that this argument could be construed as asserting that § 1001 is a continuing offense crime that extends past Defendants' commission of overt acts, the government concedes that this argument has already been foreclosed by controlling precedent. (Govt.'s Br. 18.) A scheme continues until each overt act constituting the scheme has occurred. *United States v. Heacock*, 31 F.3d 249, 256 (5th Cir. 1994) ("[T]he statute of limitations does not begin to run on a 'scheme' crime . . . until each overt act constituting the scheme has occurred, because the case cannot be brought and proved until that time."). However, the government has presented no proof that an overt act was committed after July 10, 2001 when the documents containing false statements were mailed and faxed. Thus, the existence of a scheme to defraud would have no effect on the untimeliness of the indictment of Defendants.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's order dismissing the indictment against Defendants.