RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

         *Plaintiff-Appellee,*

    *v.*

DAVID MYRIE,

         *Defendant-Appellant.*

> No. 24-2045

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cr-20331-1—Jonathan J.C. Grey, District Judge.

Decided and Filed: February 17, 2026

Before: BOGGS, NALBANDIAN, and MATHIS, Circuit Judges.

_____

### COUNSEL

_____

**ON BRIEF:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant. Scott A.C. Meisler, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., William J. Vailliencourt, Jr., UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

### OPINION

_____

BOGGS, Circuit Judge. David Myrie appeals his conviction under 8 U.S.C. § 1326 for unlawfully reentering the United States after prior removals. He claims that § 1326, a facially race-neutral law, violates equal protection under the Fifth Amendment's Due Process Clause by discriminating against Mexican and other Latino immigrants. He argues that the statute's

predecessor—the Undesirable Aliens Act of 1929—was enacted with discriminatory intent,[1] and that § 1326, first codified as part of the Immigration and Nationality Act (INA) of 1952 and amended several times thereafter, perpetuates that taint because Congress failed to affirmatively repudiate the racist intent of the 1929 Act.

Eight of our sister circuits have addressed similar constitutional challenges to § 1326 and all have rejected them.[2]  For the reasons set forth below, so do we.

## I.  Background

Myrie, a native and citizen of Jamaica, entered the United States without inspection in 1996 and was first ordered removed by an immigration judge in 1997.  Before he was actually removed in December 2002, he was convicted of firearms and drug offenses in two different states.  Thereafter Myrie unlawfully returned to the United States multiple times and has been ordered removed from the United States on at least five different occasions.  Myrie has a lengthy criminal record dating back two decades.  In addition to immigration offenses, he has been arrested for drugs, weapons, escape, and money laundering, resulting in six felony convictions. Myrie was most recently removed in April 2023.  In May 2023, he was caught at the Ambassador Bridge in Detroit, Michigan, and charged with unauthorized entry by an alien who had been removed subsequent to conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).  This is Myrie's eleventh felony conviction and fifth felony immigration conviction in violation of § 1326.

---

[1]The government "assumes for the sake of argument that the 1929 Act was motivated in part by discriminatory intent." (Appellee Brief at 23 n.6)

[2]*See United States v. Suquilanda*, 116 F.4th 129, 139 (2d Cir. 2024); *United States v. Wence,* No. 22-2618, 2023 WL 5739844 at *3 (3d Cir. Sep. 6, 2023) (unpublished); *United States v. Sanchez-Garcia,* 98 F.4th 90, 94 (4th Cir. 2024); *United States v. Barcenas-Rumualdo*, 53 F.4th 859, 863 (5th Cir. 2022); *United States v. Viveros-Chavez,* 114 F.4th 618, 622 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1097 (2025); *United States v. Carrillo-Lopez,* 68 F.4th 1133, 1138 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 703 (2024); *United States v. Amador-Bonilla,* 102 F.4th 1110, 1113 (10th Cir. 2024); *United States v. Ferretiz-Hernandez*, 139 F.4th 1286, 1289 (11th Cir. 2025), *cert. denied*, _ S. Ct. _, 2026 WL 79803 (U.S. Jan. 12, 2026).

Myrie moved to dismiss on grounds that § 1326 violates the equal-protection guarantee of the Fifth Amendment by discriminating against Mexican and other Latino immigrants.[3] Applying *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977), the district court held that Myrie failed to explain how the legislative history, intent, and purpose of the 1929 Act and its predecessor, the National Origins Act of 1924, constituted the legislative history of the 1952 INA. Further, the court held that Myrie failed to offer evidence "that Mexican and/or Latino persons are disproportionately represented in convictions for illegal reentry under § 1326." And, even if Myrie could show disparate impact, he failed to establish that such impact stems from "an invidious discriminatory purpose." Finally, the district court rejected the idea that discriminatory intent motivated Congress when it enacted § 1326, setting forth and adopting the "exhaustive analysis" of the Ninth Circuit in *United States v. Carrillo-Lopez*, 68 F.4th 1133 (9th Cir. 2023).

After denying Myrie's motion to dismiss, the district court calculated his sentencing guidelines range at 51 to 63 months of imprisonment and imposed a sentence of 51 months. Myrie timely filed this appeal.

## II.  Standard of Review

We review de novo the district court's refusal to dismiss an indictment on constitutional grounds. *United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024). Where, as here, the district court's constitutional ruling turned on a factual determination—that Myrie failed to show that § 1326 was motivated by a discriminatory purpose—that determination is a factual finding reviewed for clear error. *See Brnovich v. DNC*, 594 U.S. 647, 687 (2021); *Abbott v. Perez*, 585 U.S. 579, 607 (2018); *see also United States v. Grenier*, 513 F.3d 632, 635 (6th Cir. 2008) (explaining that "[t]he standard of review to be applied for a motion to dismiss an indictment is somewhat unclear."). Factual findings are clearly erroneous if "the reviewing court on the entire

---

[3]The district court identified Myrie as "a Latino citizen of Jamaica." However, the government's complaint and presentence report do not identify Myrie as Latino. Myrie's brief on appeal and his Motion to Dismiss the Indictment do not address Myrie's ethnicity. Regardless, while the interplay between Myrie's ethnicity, however defined, and Jamaican nationality is ambiguous "[w]e must accept the district court's factual findings unless they are clearly erroneous." *United States v. McCloud*, 935 F.3d 527, 532 (6th Cir. 2019). Here, no evidence in the record refutes that conclusion, so the district court did not clearly err.

evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

### III.  Discussion

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The Due Process Clause "contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis,* 426 U.S. 229, 239 (1976). When a statute makes an express classification on the basis of race, it is subject to strict scrutiny and "is presumptively invalid and can be upheld only upon an extraordinary justification." *Shaw v. Reno,* 509 U.S. 630, 643-44 (1993).  In contrast, a facially neutral statute, such as § 1326, only violates the Fifth Amendment if it produces a disparate impact and if a discriminatory purpose was a motivating factor for its enactment. *See Arlington Heights,* 429 U.S. at 265-66.

However, as every circuit to address this issue has recognized, it is unclear whether *Arlington Heights* applies here.  In these cases, the government argues that immigration laws enacted under Congress's plenary power over immigration are subject only to a rational-basis review**,** (Appellee. Brief at 32-39) while criminal defendants typically argue "that § 1326 is a domestic criminal statute—not a rule of admission or exclusion—and thus subject to ordinary equal protection analysis." *United States v. Ferretiz-Hernandez*, 139 F.4th 1286, 1291-92 (11th Cir. 2025).  Like our sister circuits, we do not need to resolve this dispute because Myrie's equal-protection claim fails even if we apply the *Arlington Heights* framework. *Ibid*.

To prove discriminatory intent, plaintiffs must "prove by a preponderance of the evidence that racial discrimination was a substantial or motivating factor in the adoption of [the challenged provision]." *Hunter v. Underwood*, 471 U.S. 222, 225 (1985) (quoting *Underwood v. Hunter*, 730 F.2d 614, 617 (11th Cir. 1984)).  "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266.  Factors to consider in that inquiry include (1) the historical background of the decision to enact the law, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural

sequence followed by decision-makers, (4) substantive departures from factors usually considered important by decision-makers that would strongly favor a contrary decision, and (5) legislative or administrative history.  *Id.* at 267-68.  Lawmakers must have "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Pers. Adm'r. of Mass. v. Feeney,* 442 U.S. 256, 279 (1979).

Under *Arlington Heights*, Myrie bears the burden of showing that § 1326 was enacted for a discriminatory purpose and has a disparate impact.  In his briefing on appeal, Myrie never tries to establish discriminatory intent using the *Arlington Heights* framework to analyze § 1326. (Appellant Brief at 7)  In his motion to dismiss the indictment, Myrie did apply the *Arlington Heights* framework to argue the discriminatory intent of the 1929 Act, but he provided almost no evidence addressing § 1326.  On appeal, Myrie does not provide any evidentiary support under the *Arlington Heights* framework—no historic background, no sequence of events leading up to the passage of §1326, no departures from normal procedural sequence, no substantive departures, and no legislative or administrative history.  Rather, he merely asserts his predicate supposition that § 1326 is a "simple recodification" of the 1929 Act with no supporting evidence.  His argument is based solely on the assumption that § 1326 recodifies the 1929 Act, a presumption repudiated by the Ninth Circuit's meticulous and thorough legislative-history analysis of § 1326, *Carrillo-Lopez,* 68 F.4th at 1143-50, and further amplified by the Second, Third, Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits.  *See* cases cited *supra* note 2.

In arguing that § 1326 is a "simple recodification" of the 1929 Act, thus bringing with it the intent of the earlier law, Myrie asks this court to hold that Congress must expressly disavow racism when it reenacts a prior law that was shown or assumed to be racist in origin and enforcement.  (Appellant Brief at 12)  This request "rests on a misunderstanding of how legislative intent works." *Ferretiz-Hernandez*, 139 F.4th at 1293.  Courts begin from the presumption that legislatures act in good faith.  *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *Abbott*, 585 U.S. at 603.  The Supreme Court has held that this good-faith presumption is not changed by a finding of past discrimination which "cannot, in the manner of original sin,

condemn governmental action that is not itself unlawful." *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) (plurality opinion).

To that end, the Supreme Court has specifically held that a future legislature has no "duty to purge its predecessor's allegedly discriminatory intent." *Abbott*, 585 U.S. at 605-06; *see United States v. Sanchez-Garcia*, 98 F.4th 90, 99 (4th Cir. 2024); *Carrillo-Lopez*, 68 F.4th at 1151. Further, "the views of an earlier legislature are generally not probative of the intent of a later legislature, particularly when the subsequent legislature has a substantially different composition." *Carrillo-Lopez*, 68 F.4th at 1140 (citation modified). Here, "Congress experienced a more than 96 percent turnover of its personnel" in the twenty-three years between enactment of the two laws. *Id*. at 1150.

Myrie relies on a case involving the revision and recodification of the Judicial Code in 1948 for the proposition that courts should not infer that "Congress, in revising and consolidating the laws, intended to change their effect unless, such intention is clearly expressed." *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957). However, the 1952 INA was not a recodification project, "but rather a broad reformulation of the nation's immigration laws . . . . Section 1326 itself incorporated provisions from three acts[,] made substantial revisions and additions," and was substantially different from the 1929 Act. *Carrillo-Lopez*, 68 F.4th at 1151. And since 1952, "Congress has revisited and amended § 1326 repeatedly. Each time, it expanded the statute's reach, increased penalties, or modified provisions in accordance with changing law." *Ferretiz-Hernandez*, 139 F.4th at 1296. Myrie does not argue that that those reenactments were racially motivated, and "[i]n the end, '[t]he further removed that § 1326 becomes from [the 1929 Act] by amendment, the less it retains its odor.'" *Ibid*. (quoting *Barcenas-Rumualdo,* 53 F.4th at 866).

The district court also held that Myrie failed to offer evidence "that Mexican and/or Latino persons," however defined, are disproportionately represented in convictions for illegal reentry under § 1326. On appeal, Myrie argues that in his motion to dismiss "[h]e pointed out statistics showing that Mexicans and other Latinos make up a large proportion of those arrested at the border for illegal entry." (Appellant Brief at 11-12) However, an obvious geographic reason for any disproportionate impact of immigration laws on "Latinos" undermines any

inference of discriminatory motive. *See Carrillo-Lopez*, 68 F.4th at 1153. As the Supreme Court has noted, "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34 (2020) (opinion of Roberts, C.J.). "Were this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Ibid.* Here, Myrie has presented no evidence that discriminatory intent was a reason for the passage of § 1326. Even if § 1326 has a disparate impact on "Mexicans and other Latinos," that is not sufficient to state a plausible equal-protection claim.

**IV**

The legislative history of the 1929 Act is not the legislative history of § 1326, most obviously because § 1326 incorporated portions of three preexisting statutes, including but not limited to the 1929 Act. Further, the Supreme Court in *Abbott* rejected the idea that a future legislature must specifically disavow or purge its predecessor's discriminatory intent. *Abbott*, 585 U.S. at 605-06. Instead, the burden lies with a challenger to show that the relevant legislation—section 1326—was enacted with discriminatory purpose. Myrie, ignoring the *Arlington Heights* framework, failed to establish discriminatory intent. Having failed to do so, we are not left with the definite and firm conviction that a mistake has been committed by the district court. Put simply, "the statute before us is not the unlawful reentry provision in the 1929 Act; it is § 1326, enacted in 1952 and amended repeatedly thereafter. That distinction is dispositive." *Ferretiz-Hernandez*, 139 F.4th at 1293. Myrie has failed to show that discriminatory intent was a purpose of the enactment of § 1326.

Accordingly, we **AFFIRM** the district court's judgment.