# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 18, 2022

Lyle W. Cayce
Clerk

No. 21-50795

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

YOBANI BARCENAS-RUMUALDO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CR-1849

Before GRAVES, WILLETT, and ENGELHARDT, *Circuit Judges*.
DON R. WILLETT, *Circuit Judge*:

Yobani Barcenas-Rumualdo was indicted for illegally reentering the United States, a violation of 8 U.S.C. § 1326. He unsuccessfully moved to dismiss the indictment on equal protection grounds. After a bench trial on stipulated facts, the district court sentenced him to 30 months' imprisonment and three years' supervised release.

On appeal, Barcenas-Rumualdo argues that § 1326 violates the Fifth Amendment's equal protection principles. As for his sentence, he asserts that the district court (1) failed to consider sentencing disparities, (2)

No. 21-50795

improperly considered the timing of an appeal in sentencing him to three years of supervised release, and (3) failed to consider the Sentencing Guidelines' policy on supervised release for deportable defendants. The Government concedes that the district court erred in basing the term of supervised release on the timing of an appeal but otherwise defends Barcenas-Rumualdo's conviction and sentence.

We agree that the district court abused its discretion by considering the appeal clock in determining the appropriate term of supervised release. Accordingly, we VACATE that part of Barcenas-Rumualdo's sentence and REMAND for reconsideration of the supervised-release term. We otherwise AFFIRM Barcenas-Rumualdo's conviction and sentence.

I

On July 21, 2020, United States Border Patrol cameras detected several individuals crossing into the United States from Mexico about seven miles west of the Tornillo Port of Entry. Border Patrol agents found Barcenas-Rumualdo and four others, including his cousin, hiding in a nearby field. When questioned, Barcenas-Rumualdo admitted that he was a citizen of Mexico and had no permission to be in the United States. His immigration record confirmed this, showing that he had been removed from the United States twice before.

Barcenas-Rumualdo was indicted for unlawful reentry into the United States after a prior removal. He moved to dismiss his indictment, arguing that § 1326 is unconstitutional because (1) Congress enacted its predecessor, the Undesirable Aliens Act of 1929 (UAA),[1] out of animus toward Mexican and Latino immigrants, (2) more recent versions of the statute "d[id] not cleanse

---

[1] As the Government notes, Congress did not enact the 1929 statute under this name, as the title was amended before passage. *See* 70 CONG. REC. 4952 (Mar. 1, 1929).

the law of its original taint," and (3) the statute has a disparate adverse impact on Mexican and Latino individuals.

The district court denied the motion. Starting with the standard, the court rejected the Government's argument that it must apply deferential review since § 1326 pertains to immigration. The district court viewed § 1326's criminal penalties as differentiating it from immigration statutes involving Congress's core power over admission and exclusion of aliens—a power that the Supreme Court has held requires limited judicial interference. Citing cases holding that noncitizen criminal defendants have certain constitutional protections, the district court determined that Congress's authority to adopt criminal immigration penalties was subject to constitutional restraints and the accompanying levels of scrutiny.

Applying general equal protection standards and the framework from *Village of Arlington Heights v. Metropolitan Housing Development Corp.*,[2] the district court held that while the UAA violated equal protection principles, § 1326 and its later amendments did not. The court held that Congress enacted subsequent versions of § 1326 through a "deliberative process" without the desire to discriminate, thus removing any prior discriminatory taint. Because § 1326 had been cleansed, the court declined to address whether the statute could survive any level of scrutiny.

Barcenas-Rumualdo was convicted at a bench trial on stipulated facts. The presentence report (PSR) calculated the Guidelines range as 30–37 months of imprisonment and one to three years of supervised release. Barcenas-Rumualdo did not object to the PSR, and at sentencing he agreed with the district court's calculation of the range. But he argued for a downward departure so that his sentence would match that of his cousin who

---

[2] 429 U.S. 252, 264–68 (1977).

was arrested with him, had the same reasons for illegally reentering the United States, and had the same prior conviction enhancement for conspiracy to commit aggravated robbery. Barcenas-Rumualdo explained that, even though his cousin had a higher Guidelines range, the sentencing court departed downward because of the age of the identical prior conviction. The district court stated that it was "unimpressed" with Barcenas-Rumualdo's argument because the court had "no way of putting [itself] in [the] place" of his cousin's sentencing court or of knowing what that court "saw in that report, or whatever." After hearing from counsel again on the point, the court mentioned the aggravated robbery conviction and let Barcenas-Rumualdo allocute.

The district court sentenced Barcenas-Rumualdo within the Guidelines range to 30 months' imprisonment and three years' non-reporting supervised release. In sentencing him to a three-year supervised release term, the district court focused solely on allowing Barcenas-Rumualdo time to appeal his conviction. Barcenas-Rumualdo objected to basing the supervised-release sentence on the appellate timeline and reiterated his argument about sentencing disparity. The court overruled the objection, and Barcenas-Rumualdo timely appealed.[3]

II

We review de novo constitutional questions and the denial of a motion to dismiss an indictment.[4] By contrast, "[w]e generally review sentences for abuse of discretion."[5]

---

[3] *See* Fed. R. App. P. 4(b)(1)(A)(i).

[4] *See United States v. Wright*, 777 F.3d 769, 777 (5th Cir. 2015); *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017).

[5] *United States v. Cancino-Trinidad*, 710 F.3d 601, 604 (5th Cir. 2013).

No. 21-50795

## III

## A

Barcenas-Rumualdo challenges his conviction on the ground that the illegal reentry statute, 8 U.S.C. § 1326, is facially unconstitutional under the equal protection principles of the Fifth Amendment. We affirm the district court's holding that § 1326 does not violate the Fifth Amendment.

The Fifth Amendment of the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[6] The Supreme Court has interpreted the Fifth Amendment to "contain[] an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups."[7] Generally, a statute that discriminates based on race or alienage is unenforceable unless it is "suitably tailored to serve a compelling state interest."[8]

Section 1326 makes it a crime for any alien who "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding" to "thereafter enter[], attempt[] to enter, or [be] at any time found in, the United States" without appropriate authorization.[9] On its face, § 1326 does not discriminate: All aliens who re-enter the United States without permission after a previous removal are subject to its terms regardless of race or alienage.

---

[6] U.S. Const. amend. V.

[7] *Washington v. Davis*, 426 U.S. 229, 239 (1976).

[8] *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

[9] 8 U.S.C. § 1326(a).

No. 21-50795

Even so, the Supreme Court has held that a facially neutral statute can violate equal protection principles if it has a racially disproportionate impact.[10] To show that such a statute violates equal protection, a challenger must prove that the statute was enacted for a discriminatory purpose or intent and also that it has a disparate impact.[11] The burden then shifts to the government to show it would have enacted the law without the discriminatory purpose.

Barcenas-Rumualdo builds his argument around this framework. Pointing to the history of the UAA, Barcenas-Rumualdo argues that § 1326 is built on a rotten foundation of racial animus towards Mexican and Latino immigrants that subsequent amendments did not rectify. In Barcenas-Rumualdo's view, this history plus the statute's alleged disparate impact on Mexican and Latino individuals means that § 1326 is unconstitutional.

Before turning to the merits of Barcenas-Rumualdo's argument, the Government contends that *Arlington Heights* is the wrong framework to view this claim. Since § 1326 concerns immigration, the Government argues that we should review Barcenas-Rumualdo's challenge under a more deferential standard akin to rational-basis review.

There is ample support for both positions. On one hand, § 1326 is part of Congress's immigration scheme. The Supreme Court and this court have recognized that Congress's broad authority over admission and exclusion warrants limited judicial interference.[12] On the other, § 1326 relates to those

---

[10] *See Arlington Heights*, 429 U.S. at 265–66.

[11] *See id.*; *see also Harness v. Watson*, 47 F.4th 296, 304–05 (5th Cir. 2022) (en banc) (per curiam).

[12] *See Demore v. Kim*, 538 U.S. 510, 522 (2003) ("[The Supreme Court] has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens"); *see also Madriz-Alvarado v. Ashcroft*, 383

6

No. 21-50795

already excluded, so it does not unequivocally fall under Congress's exercise of power over admission and exclusion. We have held that "the broad power to control immigration does not imbue Congress with plenary power over aliens themselves."[13] And the Supreme Court has historically afforded some due process protections to aliens.[14]

The district courts that have addressed identical challenges are split on the correct standard of review. But every court but one agrees that § 1326 is constitutional.[15] We need not now resolve which standard of review applies

---

F.3d 321, 332 (5th Cir. 2004) ("In light of Congress's plenary power to pass legislation concerning the admission or exclusion of aliens, it is clear that no more searching review than that of rational basis is appropriate.").

[13] *Rodriguez-Silva v. INS*, 242 F.3d 243, 247 (5th Cir. 2001).

[14] *See, e.g.*, *Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (holding that an alien may not be punished criminally without a trial).

[15] *See, e.g.*, *United States v. Barrera-Vasquez*, No. 2:21-CR-98, 2022 WL 3006773, at *3 (E.D. Va. July 28, 2022) (upholding § 1326 under both standards of review); *United States v. Ramirez-Aleman*, No. 21-CR-3403, 2022 WL 1271139, at *8 (S.D. Cal. Apr. 27, 2022) (same); *United States v. Maldonado-Guzman*, No. 21-CR-448, 2022 WL 2704036, at *3 (S.D.N.Y. July 12, 2022) (upholding § 1326 under *Arlington Heights*); *United States v. Muñoz-De La O*, No. 2:20-CR-134, 2022 WL 508892, at *16 (E.D. Wash. Feb. 18, 2022) (same); *United States v. Sanchez-Felix*, No. 21-cr-310, 2021 WL 6125407, at *3 (D. Colo. Dec. 28, 2021) (same); *United States v. Machic-Xiap*, 552 F. Supp. 3d 1055, 1062–63 (D. Or. 2021) (same); *United States v. Wence*, No. 3:20-CR-27, 2021 WL 2463567, *3 (D. V.I. June 16, 2021) (same); *United States v. Zepeda*, No. CR 20-0057, 2021 WL 4998418, at *2 (C.D. Cal. Jan. 5, 2021) (same); *United States v. Hernandez-Lopez*, 583 F. Supp. 3d 815, 819–24 (S.D. Tex. Feb. 2, 2022) (applying *Arlington Heights* to hold that the statute was not enacted with a discriminatory motive and upholding § 1326 under rational basis); *United States v. Rivera-Sereno*, No. 2:21-CR-129, 2021 WL 5630728, at *4 (S.D. Ohio Dec. 1, 2021) (upholding § 1326 under rational basis); *United States v. Amador-Bonilla*, No. CR-21-187, 2021 WL 5349103, at *1 (W.D. Okla. Nov. 16, 2021) (same); *United States v. Samuels-Baldayaquez*, No. 4:20-CR-83, 2021 WL 5166488, at *2 (N.D. Ohio Nov. 5, 2021) (same); *United States v. Novondo-Ceballos*, 554 F. Supp. 3d 1114, 1119 (D.N.M. 2021) (same); *United States v. Gutierrez-Barba*, No. CR-19-01224-1, 2021 WL 2138801, at *2 (D. Ariz. May 25, 2021) (same); *United States v. Maurico-Morales*, No. CR-21-298-R, 2022 WL 99996, at *1 (W.D. Okla. Jan. 10, 2022) (same); *but see United States v. Carrillo-Lopez*, 555 F. Supp. 3d

No. 21-50795

because Barcenas-Rumualdo's equal-protection challenge fails under either standard.

1

A statute satisfies rational basis review if "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."[16] "We have stated that to uphold a [government's] classification, a court need find only 'a conceivable rational basis for the official action.'"[17] Barcenas-Rumualdo makes no showing that § 1326 is not supported by a rational basis. Instead, he focuses on the application of *Arlington Heights*. He thus fails to meet his burden to show that § 1326 does not satisfy rational-basis review.

2

Turning to the more searching standard, *Arlington Heights* requires a challenger "to prove by an evidentiary preponderance that racial discrimination was a substantial or motivating factor in enacting the challenged provision."[18] *Arlington Heights* lists five factors for courts to consider when determining if a statute was passed with a discriminatory purpose: "(1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history,

---

996, 1027 (D. Nev. 2021) (holding § 1326 unconstitutional under *Arlington Heights*). A recent District of Nevada decision rejected the reasoning in *Carillo-Lopez*. *See United States v. Salas-Silva*, No. 3:20-CR-54, 2022 WL 2119098, at *1 (D. Nev. June 13, 2022).

[16] *Heller v. Doe*, 509 U.S. 312, 320 (1993).

[17] *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020) (quoting *Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988)).

[18] *Harness*, 47 F.4th at 304.

especially where there are contemporary statements by members of the decision-making body."[19]

Barcenas-Rumualdo relies heavily on the political climate and debate surrounding the passage of the UAA. He paints a vivid picture of the UAA's troubling history, but the UAA is not our point of reference. Newly binding circuit precedent requires us to "look to the most recent enactment of the challenged provision," in determining its constitutionality.[20] Section 1326 was enacted in 1952 as part of the Immigration and Nationality Act (INA).[21] So we look to the history of that enactment in determining whether Barcenas-Rumualdo has met his burden.

Much of the evidence Barcenas-Rumualdo cites in support of his position relates to the history of the UAA. But our *Harness* decision abrogates the relevance of that evidence.[22] Narrowing Barcenas-Rumualdo's evidence to that relating to § 1326, this evidence includes the history surrounding the INA and the INA's disproportionate impact on Mexican and Latino immigrants. Relying on *Carrillo*, the lone decision holding that § 1326 is unconstitutional, Barcenas-Rumualdo specifically focuses on (1) the lack of robust debate about the UAA, (2) President Truman's veto of the INA, (3)

---

[19] *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989) (citing *Arlington Heights*, 429 U.S. at 267–68).

[20] *See Harness*, 47 F.4th at 306.

[21] *See* INA, Pub. L. No. 82-414, § 276, 66 Stat. 163, 229 (1952).

[22] Barcenas-Rumualdo points to the Supreme Court's decisions in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), to establish that it is important to look at the discriminatory history of a statute and that "later reenactments do not cleanse the law of its original taint." Neither case supports this proposition. *See Ramos*, 140 S. Ct. at 1394, 1401 n.44 (holding a nonunanimous jury rule violated the Sixth Amendment regardless of the rule's history); *Espinoza*, 140 S. Ct. at 2262 (holding a school voucher program violated the First Amendment solely based on the program itself).

No. 21-50795

Deputy Attorney General Ford's letter, and (4) the proposal of the derogatorily coined "Wetback Bill." This evidence is insufficient to establish that Congress enacted § 1326 with racial animus.

First, we presume the legislature acted in good faith.[23] So, we do not take Congress's silence about the history of the UAA as evidence that it adopted any prior discriminatory intent.[24] Moreover, Congress has amended § 1326 multiple times since its enactment. "[B]y amendment, a facially neutral provision . . . might overcome its odious origin."[25] Barcenas-Rumualdo makes no showing that those amendments were adopted with racial animus. The further removed that § 1326 becomes from the UAA by amendment, the less it retains its odor.

Second, even assuming that President Truman's veto of the INA and adjoining statement say something about § 1326 specifically and not just the INA generally,[26] it carries scant interpretive weight. President Truman's opinion on the INA is not probative of what Congress believed.[27] And as other circuits have recognized, "opponents of a bill are to be accorded little weight because '[i]n their zeal to defeat a bill, [opponents] understandably

---

[23] *See Harness*, 47 F.4th at 306.

[24] *See also Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) ("The allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination.").

[25] *Cotton v. Fordice*, 157 F.3d 388, 391 (5th Cir. 1998).

[26] As other courts have noted, President Truman's statement pertained to the INA's usage of quotas, not § 1326 specifically. *Machic-Xiap*, 552 F. Supp. 3d at 1075; *see also Hernandez-Lopez*, 2022 WL 313774, at *4.

[27] *See Salas-Silva*, 2022 WL 2119098, at *3; *Maldonado-Guzman*, 2022 WL 2704036, at *4; *cf. Fusilier v. Landry*, 963 F.3d 447, 466 (5th Cir. 2020) (error to impute local officials' views to the legislature).

tend to overstate its reach.'"[28] Attorney General Ford's letter carries little weight for the same reasons.

Finally, the proposal of a crudely nicknamed bill does not carry Barcenas-Rumualdo's burden of proving that Congress enacted § 1326 with racial malice. The fact that individual lawmakers dubbed a bill something derogatory, without more, says nothing of the motivations of Congress "as a whole" regarding the INA or § 1326 specifically.[29]

In reply, Barcenas-Rumualdo points to the history of immigration law after the passage of the INA, which he says shows a continuing drive of racial animus. Even crediting this history, it says nothing about the Congress's collective intent in amending § 1326. Rather, much of it relates to other enactments. This history fails to provide any "specific sequence of events" showing discriminatory intent in the passage of § 1326's subsequent amendments.[30]

Because Barcenas-Rumualdo fails to meet his burden of proving § 1326 was enacted with a racially discriminatory motive, any disparate impact of the law is insufficient to carry the day. "This conclusion ends the constitutional inquiry."[31] We thus AFFIRM the district court's denial of Barcenas-Rumualdo's motion to dismiss.

---

[28] *Fieger v. U.S. Att'y Gen.*, 542 F.3d 1111, 1119 (6th Cir. 2008) (quoting *NLRB v. Fruit & Vegetable Packers & Warehousemen*, 377 U.S. 58, 66 (1964)).

[29] *See Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021).

[30] *Arlington Heights*, 429 U.S. at 267.

[31] *Id.* at 271; *see also Washington*, 426 U.S. at 242 ("[W]e have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another.").

No. 21-50795

B

We now turn from Barcenas-Rumualdo's conviction to his sentence, which he maintains is procedurally and substantively flawed. Specifically, he argues the district court erred in (1) failing to account for sentencing disparities, (2) relying on the appellate timeline in determining the appropriate term of supervised release, and (3) failing to consider guidance disfavoring supervised release for deportable defendants. The Government rightly concedes the second error. Because we remand on that point, we do not address the last point of error.

Section 3553(a) directs courts to consider certain factors in crafting a sentence, including "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[32] "At sentencing, the district court must 'state in open court the reasons for its imposition of the particular sentence.'"[33]

We review sentences for abuse of discretion.[34] We first "ensure that the district court committed no significant procedural error such as . . . failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence."[35] "If the sentencing decision is 'procedurally

---

[32] *United States v. Gomez-Herrera*, 523 F.3d 554, 563 (2008) (quoting 18 U.S.C. § 3553(a)(6)); *see also Gall v. United States*, 552 U.S. 38, 51 (2007).

[33] *United States v. Gozes-Wagner*, 977 F.3d 323, 341 (5th Cir. 2020) (quoting 18 U.S.C. § 3553(c)).

[34] *Cancino-Trinidad*, 710 F.3d at 604.

[35] *Gall*, 552 U.S. at 51.

sound,' we 'then consider the substantive reasonableness of the sentence.'"[36] We assess sentences of supervised release similarly.[37]

1

Barcenas-Rumualdo first argues that the district court failed to consider that a sentence within the Guidelines range would create an unwarranted sentencing disparity with the sentence of his cousin who was arrested with him and had the same prior conviction. However, the district court heard this argument and rejected it.

At sentencing, the district court stated that it "was not impressed" with Barcenas-Rumualdo's sentencing disparity argument because, the court explained, it had "no way of putting [itself] in [the other court's] place" and understanding what the other court saw in the cousin's PSR or other evidence which compelled that court to vary downward. This explanation may not be robust, but it addresses Barcenas-Rumualdo's argument and shows the court considered it. That is all that is required.[38]

2

Barcenas-Rumualdo next argues that the district court procedurally erred in considering the appeal clock in sentencing him to three years of supervised release. We agree. Section 3583 directs courts to consider certain factors outlined in § 3553 in deciding the proper term of supervised release.[39]

---

[36] *Cancino-Trinidad*, 710 F.3d at 605 (quoting *Gall*, 552 U.S. at 51).

[37] *See id.* at 607; *United States v. Acosta-Navarro*, 781 F. App'x 318, 323 (5th Cir. 2019) (per curiam).

[38] *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir.2005) ("When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required.").

[39] 18 U.S.C. § 3583.

No. 21-50795

The district court imposed three years of supervised release solely out of fear that a lower sentence would moot an appeal. The timing of an appeal is not a factor that courts are tasked with considering in imposing supervised release. Such a consideration is also irrelevant because Barcenas-Rumualdo could appeal his conviction even after his sentence ends.[40] The district court abused its discretion by basing the term of supervised release on the irrelevant timing for an appeal.[41] Because we remand for the district court to reconsider supervised release, we do not address Barcenas-Rumualdo's last point of error.

IV

We REMAND for the district court to reconsider its sentence of supervised release. We otherwise AFFIRM Barcenas-Rumualdo's conviction and sentence.

---

[40] *See United States v. Villanueva-Diaz*, 634 F.3d 844, 848–49 (5th Cir. 2011) (holding that an appeal of a conviction is not mooted by the end of supervised release).

[41] *See United States v. Jenkins*, 712 F.3d 209, 214 (5th Cir. 2013) (noting that a within-Guidelines sentence can nevertheless be substantively unreasonable if the district court considers an irrelevant factor); *United States v. Villegas-Perez*, 536 F. App'x 390, 390 (5th Cir. 2013) (per curiam) (applying *Jenkins* to procedural reasonableness).

No. 21-50795

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting in part:

I agree with the majority that the district court abused its discretion by considering the appeal clock in determining the appropriate term of supervised release. However, consistent with my dissenting opinion in *Harness v. Watson*, 47 F.4th 296, 317 (5th Cir. 2022), I disagree with the majority's conclusion that 8 U.S.C. § 1326 does not violate the principles of equal protection. Thus, I respectfully dissent in part.