**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4072

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JORGE SANCHEZ-GARCIA, a/k/a Jorge Sanchez Garcia, a/k/a Jorge Garcia Sanchez,

Defendant - Appellant.

------------------------------

LEGAL SERVICE PROVIDERS; IMMIGRANT RIGHTS ORGANIZATIONS; DR. S. DEBORAH KANG; ASIAN AMERICANS ADVANCING JUSTICE; HUMAN RIGHTS FIRST; NORTHWEST IMMIGRANT RIGHTS PROJECT; ADVOCATES FOR BASIC LEGAL EQUALITY, INC.; JUSTICE STRATEGIES; LATINOJUSTICE PRLDEF; LEGAL AID JUSTICE CENTER; MASSACHUSETTS LAW REFORM INSTITUTE; NATIONAL IMMIGRATION LAW CENTER; IMMIGRATION SCHOLARS; CENTER FOR IMMIGRATION LAW AND POLICY; AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES; SOUTHERN POVERTY LAW CENTER; PROFESSOR ERIC FISH,

Amici Supporting Appellant.

No. 22-4075

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

VINCENTE BANALES RODRIGUEZ, a/k/a Vincente Banales-Rodriguez, a/k/a Vincente Banalas Rodriguez, a/k/a Vincente Banales Rodrigues, a/k/a Vincente Rodriguez, a/k/a Vicente Banales Rodriguez, a/k/a Vicente Banales-Rodriguez, a/k/a Vicente Banalas Rodriguez, a/k/a Vicente Rodriguez, a/k/a Victor Carrillo-Banales, a/k/a Victor Carrillo,

Defendant – Appellant.

------------------------------

LEGAL SERVICE PROVIDERS; IMMIGRANT RIGHTS ORGANIZATIONS; DR. S. DEBORAH KANG; ASIAN AMERICANS ADVANCING JUSTICE; HUMAN RIGHTS FIRST; NORTHWEST IMMIGRANT RIGHTS PROJECT; ADVOCATES FOR BASIC LEGAL EQUALITY, INC.; JUSTICE STRATEGIES; LATINOJUSTICE PRLDEF; LEGAL AID JUSTICE CENTER; MASSACHUSETTS LAW REFORM INSTITUTE; NATIONAL IMMIGRATION LAW CENTER; IMMIGRATION SCHOLARS; CENTER FOR IMMIGRATION LAW AND POLICY; AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES; SOUTHERN POVERTY LAW CENTER; PROFESSOR ERIC FISH,

Amici Supporting Appellant.

**No. 22-4077**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

NICOLAS MORALES-GUTIERREZ, a/k/a Javier Mayo-Vargas, a/k/a Leondardo Morales-Gutierrez, a/k/a Oscar Arturo Reyes, a/k/a Nicolas Mayo Morales, a/k/a Nicolas Gutierrez, a/k/a Nicolas Gutierrez-Gutierrez, a/k/a Nicolas Gutierrez Morales, a/k/a Miguel Angel Mora-Gutierres, a/k/a Miguel Mora Gutierres, a/k/a Miguel Angel Moro, a/k/a Miguel Morales-Tijon, a/k/a Nicolas Morales,

2

Defendant – Appellant.

------------------------------

LEGAL SERVICE PROVIDERS; IMMIGRANT RIGHTS ORGANIZATIONS; DR. S. DEBORAH KANG; ASIAN AMERICANS ADVANCING JUSTICE; HUMAN RIGHTS FIRST; NORTHWEST IMMIGRANT RIGHTS PROJECT; ADVOCATES FOR BASIC LEGAL EQUALITY, INC.; JUSTICE STRATEGIES; LATINOJUSTICE PRLDEF; LEGAL AID JUSTICE CENTER; MASSACHUSETTS LAW REFORM INSTITUTE; NATIONAL IMMIGRATION LAW CENTER; IMMIGRATION SCHOLARS; CENTER FOR IMMIGRATION LAW AND POLICY; AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES; SOUTHERN POVERTY LAW CENTER; PROFESSOR ERIC FISH,

Amici Supporting Appellant.

No. 22-4078

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JESUS BENITEZ PINEDA, a/k/a Jesus Benitez-Pineda, a/k/a Jesus Benitz Pineda, a/k/a Jesus Pineda Benitez, a/k/a Jesus Pineda-Benitez, a/k/a Santos Hernandez-Benitez, a/k/a Santos Hernandez,

Defendant – Appellant.

------------------------------

LEGAL SERVICE PROVIDERS; IMMIGRANT RIGHTS ORGANIZATIONS; DR. S. DEBORAH KANG; ASIAN AMERICANS ADVANCING JUSTICE; HUMAN RIGHTS FIRST; NORTHWEST IMMIGRANT RIGHTS PROJECT; ADVOCATES FOR BASIC LEGAL EQUALITY, INC.; JUSTICE STRATEGIES; LATINOJUSTICE PRLDEF; LEGAL AID JUSTICE CENTER; MASSACHUSETTS LAW REFORM INSTITUTE; NATIONAL IMMIGRATION LAW CENTER; IMMIGRATION SCHOLARS; CENTER FOR

3

IMMIGRATION LAW AND POLICY; AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES; SOUTHERN POVERTY LAW CENTER; PROFESSOR ERIC FISH,

Amici Supporting Appellant.

_____

**No. 22-4100**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

HECTOR TAPIA HERNANDEZ-AVILA,

Defendant – Appellant.

------------------------------

LEGAL SERVICE PROVIDERS; IMMIGRANT RIGHTS ORGANIZATIONS; DR. S. DEBORAH KANG; ASIAN AMERICANS ADVANCING JUSTICE; HUMAN RIGHTS FIRST; NORTHWEST IMMIGRANT RIGHTS PROJECT; ADVOCATES FOR BASIC LEGAL EQUALITY, INC.; JUSTICE STRATEGIES; LATINOJUSTICE PRLDEF; LEGAL AID JUSTICE CENTER; MASSACHUSETTS LAW REFORM INSTITUTE; NATIONAL IMMIGRATION LAW CENTER; IMMIGRATION SCHOLARS; CENTER FOR IMMIGRATION LAW AND POLICY; AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES; SOUTHERN POVERTY LAW CENTER; PROFESSOR ERIC FISH,

Amici Supporting Appellant.

_____

**No. 22-4107**

_____

4

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

       v.

MARTIN MALACARA-GUERRERO, a/k/a Martin Malacara Guerrero,

                Defendant – Appellant.

------------------------------

LEGAL SERVICE PROVIDERS; IMMIGRANT RIGHTS ORGANIZATIONS; DR. S. DEBORAH KANG; ASIAN AMERICANS ADVANCING JUSTICE; HUMAN RIGHTS FIRST; NORTHWEST IMMIGRANT RIGHTS PROJECT; ADVOCATES FOR BASIC LEGAL EQUALITY, INC.; JUSTICE STRATEGIES; LATINOJUSTICE PRLDEF; LEGAL AID JUSTICE CENTER; MASSACHUSETTS LAW REFORM INSTITUTE; NATIONAL IMMIGRATION LAW CENTER; IMMIGRATION SCHOLARS; CENTER FOR IMMIGRATION LAW AND POLICY; AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES; SOUTHERN POVERTY LAW CENTER; PROFESSOR ERIC FISH,

                Amici Supporting Appellant.

---

Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, Chief District Judge.  (1:20-cr-00402-CCE-1; 1:20-cr-00497-CCE-1;  1:20-cr-00074-CCE-1;  1:20-cr-00144-CCE-1;  1:20-cr-00448-CCE-1; 1:20-cr-00232-CCE-1)

---

Argued:  September 22, 2023                      Decided:  April 4, 2024

---

Before DIAZ, Chief Judge, and AGEE and HARRIS, Circuit Judges.

---

Affirmed by published opinion.  Judge Harris wrote the majority opinion, in which Chief Judge Diaz and Judge Agee joined.

---

5

**ARGUED:** Mireille P. Clough, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Winston-Salem, North Carolina, for Appellants. Margaret McCall Reece, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, Federal Public Defender, Eric D. Placke, First Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellants. Sandra J. Hairston, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. Khaled Alrabe, Ann Garcia, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Washington, D.C.; Charles Roth, NATIONAL IMMIGRANT JUSTICE CENTER, Chicago, Illinois, for Amici Legal Service Providers and Immigrant Rights Organizations. Michele Akemi McKenzie, MCKENZIE SCOTT PC, San Diego, California, for Amici Asian Americans Advancing Justice, Human Rights First, and Northwest Immigrant Rights Project. Philip L. Torrey, Crimmigration Clinic, HARVARD LAW SCHOOL, Cambridge, Massachusetts, for Amicus Dr. S. Deborah Kang. Lourdes Rosado, Andrew Case, LATINOJUSTICE PRLDEF, New York, New York; Max S. Wolson, Washington, D.C., Nicholas David Espiritu, NATIONAL IMMIGRATION LAW CENTER, Los Angeles, California, for Amici Advocates for Basic Legal Equality, Justice Strategies, Latino Justice PRLDEF, Legal Aid Justice Center, Massachusetts Law Reform Institute, and National Immigration Law Center. Amanda Valerio, Washington, D.C., Alexia D. Korberg, Melina Meneguin Layerenza, Patrick McCusker, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, for Amici Immigration Scholars. Yaman Salahi, EDELSON PC, San Francisco, California, for Amici The Center for Immigration Law and Policy, The Aoki Center for Critical Race and Nation Studies, The Southern Poverty Law Center, and Professor Eric Fish.

―――――――――

6

PAMELA HARRIS, Circuit Judge:

The defendants in this case are six non-citizens indicted for illegally reentering the United States following their prior removal, in violation of 8 U.S.C. § 1326. They moved to dismiss their indictments on the ground that § 1326 is unconstitutional because it was enacted with a racially discriminatory purpose.

Like virtually every other court to consider such a claim, the district court rejected the defendants' argument, finding that they had not carried their burden of showing that racial discrimination was a motive for enacting § 1326. We now affirm the judgment of the district court.

## I.

### A.

For context, we begin with the illegal-reentry provision under which the defendants were indicted. Under 8 U.S.C. § 1326, any non-citizen who "has been denied admission, excluded, deported, or removed" and then "enters, attempts to enter, or is at any time found in, the United States" without proper authorization is subject to criminal penalties. 8 U.S.C. § 1326(a).

Section 1326 was enacted in 1952 as part of the Immigration and Nationality Act ("INA" or "1952 Act"), a "full and complete" overhaul of the nation's immigration laws. *See United States v. Carrillo-Lopez*, 68 F.4th 1133, 1143, 1146-47 (9th Cir. 2023) (quoting S. REP. NO. 81-1515, at 803 (1950) ("Senate Report")). Much of the debate over the INA focused on the national-origin quota system, which opponents viewed as "discriminatory

7

in the treatment of certain nationalities of Europe." *Id.* at 1144 (quoting Senate Report at 448).[1]  As passed by Congress, the INA maintained but revised the quota system, adjusting its formulas and adding preferences for family reunification and non-citizens with specified skills. *Id.* at 1145.  It also sought to ensure that the new immigration system would be free of racial discrimination, in part by eliminating bars to naturalization based on race. *Id.*; *see* J.A. 927 (defendants' expert explaining that the INA "removed racial restrictions on naturalization and immigration" and "allowed Asian immigrants . . . to naturalize for the first time").

The 1952 Act also included the illegal reentry provision at issue here, now codified at 8 U.S.C. § 1326.  Section 1326 replaced three reentry offenses set out in three prior statutory sections, each with separate penalties. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 835 (1987) (describing prior offenses); *Carrillo-Lopez*, 68 F.4th at 1147.  Among them—and critical to the defendants' claim—was a 1929 provision ("1929 Act") making it a felony for any non-citizen, once deported, to reenter or attempt to reenter the United States. *See* Act of March 4, 1929, Pub. L. No. 70-1018, 45 Stat. 1551.  In creating a new single offense—§ 1326—the INA imposed a single penalty for all reentry defendants of a maximum two years' imprisonment, a fine, or both. *See* 8 U.S.C. § 1326(a); *Carrillo-Lopez*, 68 F.4th at 1147.  Section 1326 also added being "found in" the United States after removal as a new ground for liability, 8 U.S.C. § 1326(a)(2), creating for the first time a

---

[1] As the Senate Report explained, the national origin quotas did not apply to immigrants from Western Hemisphere countries, including Mexico and countries in Central and South America. *See* Senate Report at 459; *Carrillo-Lopez*, 68 F.4th at 1144.

"continuing offense" that commenced with reentry but was not completed until discovery and apprehension of the non-citizen, *see United States v. Ayon-Brito*, 981 F.3d 265, 270-71 (4th Cir. 2020).

This new illegal reentry provision was never addressed during the extensive congressional debate over the 1952 Act, and it was barely mentioned in the Act's legislative history. *Carrillo-Lopez*, 68 F.4th at 1145-46. Nor did President Truman mention § 1326 when he vetoed the bill, instead citing his opposition to continuation of quotas that, in his view, disfavored people from Southern and Eastern Europe. *Id.* at 1146 (citing *Veto of Bill to Revise the Laws Relating to Immigration, Naturalization, and Nationality*, 1 PUB. PAPERS 442-43 (June 25, 1952)). Congress enacted the INA over the President's veto.

Since its enactment in 1952, § 1326 has been amended on several occasions, most recently in 1996. Each time, Congress has added new penalties or otherwise strengthened the provision's punitive and deterrent effect. *See United States v. Barrera-Vasquez*, 617 F. Supp. 3d 400, 405, 411 (E.D. Va. 2022).[2]

**B.**

---

[2] Amendments in 1988, 1990 and 1994 added new or increased penalties to § 1326. *See* Pub. L. No. 100-690, § 7345, 102 Stat. 4181, 4471 (1988); Pub. L. No. 101-649, § 543, 104 Stat. 4978, 5059 (1990); Pub. L. No. 103-322, § 130001(b), 108 Stat. 1796, 2023 (1994). A 1996 amendment added a new penalty provision and expanded the class of prosecutable defendants. Pub. L. No. 104-208, 110 Stat. 3009, 3009-606, 3009-618 to 3009-620, 3009-629. A different 1996 amendment responded to the Supreme Court's decision in *Mendoza-Lopez*, by specifying the limited circumstances in which a removal order may be subject to collateral attack. *See* 8 U.S.C. § 1326(d); Pub. L. No. 104-132, § 441(a), 110 Stat. 1214, 1279.

We turn now to the proceedings in this case. Each of the six defendants was charged in a one-count indictment with illegal reentry under § 1326. Each moved to dismiss his indictment on the ground that § 1326 violates the equal protection guarantee of the Fifth Amendment because it was enacted with a racially discriminatory purpose. Relying on *United States v. Carrillo-Lopez*, 555 F. Supp. 3d 996 (D. Nev. 2021), *rev'd*, 68 F.4th 1133 (9th Cir. 2023)—then the sole decision to sustain such a claim—the defendants argued that under the *Arlington Heights* factors, *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977), they could show that § 1326 was intended to target Mexican and Central American immigrants because of their race.

On the defendants' motion and with the government's consent, the district court consolidated the six cases for an evidentiary hearing. The defendants' expert witness testified as to the history behind both the INA and the 1929 Act that was one of § 1326's predecessors. The defendants also presented the transcript of testimony from the evidentiary hearing before the district court in *Carrillo-Lopez*, and legislative materials related to the statutes in question. The main thrust of the defendants' argument was that the 1929 Act's illegal reentry provision was based on racial animus, and that this animus carried forward to the INA's enactment of substantially the same provision. J.A. 902-10, 931-32 (defendants' expert testimony); *see Carrillo-Lopez*, 555 F. Supp. 3d at 1010-11 (adopting same argument).

The district court disagreed, and in an oral ruling after the hearing, it denied the defendants' motions to dismiss their indictments. J.A. 1041-44. The court first noted a threshold question as to whether the defendants' racial bias claim should be reviewed under

10

*Arlington Heights*, as the defendants proposed, or under the rational basis standard generally applied to immigration laws, as the government argued. J.A. 1042. That dispute did not need to be resolved, the court concluded, because even under the less deferential *Arlington Heights* standard, the defendants could not meet their burden of showing that § 1326, as enacted in 1952, was motivated by racial bias. J.A. 1044.

The court considered the "entire historical context" of § 1326, consistent with *Arlington Heights*. J.A. 1043; *see Arlington Heights*, 429 U.S. at 266-67 (identifying "historical background" as factor). That included the predecessor 1929 Act, as to which the district court was prepared to assume "underlying racist motivations." J.A. 1042. But the case for impermissible racial bias with respect to the 1952 Act and § 1326 itself, the court continued, was "much weaker," in part because there was evidence that other purposes – "economic factors, [] labor market factors, national security factors" – motivated both § 1326's original enactment and its repeated amendments "well into the modern era." J.A. 1043-44. Ultimately, the court was not persuaded that any racial animus from 1929 "continued into 1952 and beyond." J.A. 1044.

After their motions to dismiss were denied, the defendants pled guilty to violating § 1326, reserving the right to appeal on the issue of § 1326's constitutionality. Each defendant timely filed an appeal before this court, and we consolidated those appeals for decision.

## II.

11

The only question before us is whether the defendants have shown that § 1326 violates the equal protection guarantee of the Fifth Amendment because it was enacted with a racially discriminatory purpose. The defendants continue to argue, as before the district court, that one of § 1326's predecessor statutes, the 1929 Act, was motivated by racial animus against Mexican and Central American immigrants, and that Congress's failure to address or repudiate that animus in 1952 gives rise to an inference that § 1326 reflects that same animus.

Claims just like this have been considered and rejected by dozens of courts around the country. Virtually without exception, all have found that regardless of the origins of the 1929 Act, it cannot be shown that § 1326, enacted almost 25 years later, was motivated by racial bias. *See United States v. Barcenas-Rumualdo*, 53 F.4th 859, 865 & n.15 (5th Cir. 2022) (describing consensus in case law). There was, to be sure, one district court decision adopting the contrary position, *see Carrillo-Lopez*, 555 F. Supp. at 1005-09, on which the defendants closely modeled their evidentiary submissions and arguments in this case. But the Ninth Circuit has since reversed that decision, *see Carrillo-Lopez*, 68 F.4th at 1142-53,[3] and now three federal courts of appeals have weighed in to sustain § 1326 against equal protection challenges. *See id.*; *Barcenas-Rumualdo*, 53 F.4th at 865-67; *United States v. Wence*, No. 22-2618, 2023 WL 5739844, at *3 (3d Cir. Sept. 6, 2023).

---

[3] Because the defendants' arguments before us so closely track the district court's decision in *Carrillo-Lopez*, the Ninth Circuit's assessment of that decision is especially on point. We have thus borrowed substantially from the Ninth Circuit's thorough and well-reasoned opinion.

We review de novo the defendants' challenge to the constitutionality of a criminal statute. *See United States v. Roof*, 10 F.4th 314, 391 n.51 (4th Cir. 2021) (per curiam). We review the district court's factual findings – including its findings as to whether § 1326 is motivated by a racially discriminatory purpose – for clear error. *See N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204, 219-20 (4th Cir. 2016). Joining the consensus in the courts of appeals, we affirm the judgment of the district court rejecting the defendants' constitutional challenges to § 1326.

## A.

### 1.

The standard that generally governs an equal protection claim like the defendants' is well established. *See Carrillo-Lopez*, 68 F.4th at 1139-41 (explaining background equal protection principles). As all agree, § 1326's illegal reentry provision is racially neutral on its face. But even a facially neutral law may violate equal protection principles if racial discrimination "was a substantial or motivating factor" behind its enactment. *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 303 (4th Cir. 2020) (internal quotation marks omitted). The burden of proof is on the defendants to show that § 1326 was enacted in 1952 with this discriminatory intent. *Id.*; *Abbott v. Perez*, 585 U.S. 579, 603 (2018).

Evidence that § 1326 has a disparate impact – that it "bears more heavily on one race than another" – is relevant but not dispositive. *Arlington Heights*, 429 U.S. at 266 (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). Instead, Congress's intent is assessed under all the *Arlington Heights* factors: the "historical background" of the INA and § 1326; the sequence of events leading to § 1326's enactment, including any departures

13

from the regular legislative process; § 1326's legislative history; and whether § 1326 disproportionately impacts the Mexican and Central American immigrants against whom it is allegedly targeted because of their race. *Id.* at 266-68; *see Raymond*, 981 F.3d at 303; *McCrory*, 831 F.3d at 220-21.

All that evidence must be considered in light of the "presumption of good faith" afforded Congress's 1952 enactment of § 1326. *Abbott*, 585 U.S. at 604–05; *accord Raymond*, 981 F.3d at 303. Critically, that presumption is not changed by a finding of past discrimination, even discrimination that is part of § 1326's "historical background." *See Abbott*, 585 U.S. at 603-04. A finding of racial discrimination in connection with the 1929 Act on which defendants rely, in other words, would neither relieve the defendants of their burden of proof nor "remove[] the presumption of legislative good faith" to which the 1952 Congress is entitled. *See Raymond*, 981 F.3d at 303 (internal quotation marks omitted).

2.

The government argues at the outset that this *Arlington Heights* standard does not apply to immigration laws like § 1326. Instead, it urges, we should apply the more deferential standard, akin to rational basis review, that the Supreme Court has used in certain contexts involving immigration law. *See*, *e.g.*, *Fiallo v. Bell*, 430 U.S. 787, 792-96 (1977) (giving minimal scrutiny to gender- and legitimacy-based distinction in immigrant admission law); *see also Johnson v. Whitehead*, 647 F.3d 120, 126-27 & n.1 (4th Cir. 2011) (applying *Fiallo*'s "rational basis" standard to gender-based distinction in naturalization law and emphasizing "the plenary power of Congress in the immigration context").

14

We agree with the district court, *see* J.A. 1042, and our sister circuits, *see Carrillo-Lopez*, 68 F.4th at 1141-42; *Barcenas-Rumualdo*, 53 F.4th at 864-65, that the correct standard of review for this challenge is not entirely clear.  On the one hand, as the government reminds us, the Supreme Court has recognized that "Congress's broad authority over admission and exclusion" of non-citizens "warrants limited judicial interference." *Barcenas-Rumualdo*, 53 F.4th at 864 & n.12 (citing *Demore v. Kim*, 538 U.S. 510, 522 (2003)).  And "without precise explanation," *Carrillo-Lopez*, 68 F.4th at 1142, the Supreme Court has applied rational basis scrutiny even to allegations of invidious discrimination in immigration law, *see Trump v. Hawaii*, 585 U.S. 667, 702-04 (2018); *id.* at 741 ("[W]ithout explanation or precedential support, [the majority] limits its review . . . to rational-basis scrutiny.") (Sotomayor, J., dissenting).

On the other hand, as the defendants argue, § 1326 is a criminal statute, not a law that directly governs the admission or exclusion of non-citizens. *See Barcenas-Rumualdo*, 53 F.4th at 864-65 ("[Section] 1326 relates to those already excluded, so it does not unequivocally fall under Congress's exercise of power over admission and exclusion.").  Moreover, the Supreme Court has applied the *Arlington Heights* standard to at least some equal protection challenges in the immigration context, "again, without precise explanation." *Carrillo-Lopez*, 68 F.4th at 1142 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020)).  And to complicate matters further, while the district courts that have heard equal protection challenges to § 1326 are unanimous on the merits, they are divided on the correct standard of review. *See Barcenas-Rumualdo*, 53 F.4th at 865 (describing split in district courts).

In the end, like the other courts of appeals to weigh in, we find we need not resolve this issue. The defendants do not contend that they can prevail under rational basis review. And as we conclude below, they also cannot prevail under the *Arlington Heights* standard. So we can leave for another day a definitive resolution of the standard of review question and proceed to an analysis under the familiar *Arlington Heights* framework. *See Carrillo-Lopez*, 68 F.4th at 1142 (doing the same); *Barcenas-Rumualdo*, 53 F.4th at 865 (same); *Wence*, 2023 WL 5739844, at *3 (same).

**B.**

Under *Arlington Heights*, as outlined above, the defendants bear the burden of showing, based on the factors set out by the Supreme Court, that racial bias against Mexican and Central American immigrants was "a motivating factor" for Congress when it enacted § 1326 in 1952. *See McCrory*, 831 F.3d at 220; *accord Raymond*, 981 F.3d at 303. After an extensive evidentiary hearing, the district court found that the defendants had not carried that burden. Finding no clear error in that factual determination, we affirm. *Cf. McCrory*, 831 F.3d at 219-20 (applying clear error standard to "the ultimate factual question of a legislature's discriminatory motivation").

1.

Ordinarily, we would start under *Arlington Heights* with the historical background of the enactment in question – here, the enactment of § 1326 in 1952. *See Carrillo-Lopez*, 68 F.4th at 1140, 1147-48. But the defendants' arguments are centered almost entirely on a different law: the 1929 Act that was one of § 1326's three predecessor offenses. According to the defendants, *that* illegal reentry provision was enacted with racially

16

discriminatory intent – and when Congress passed § 1326 in 1952 without addressing and "repudiating" that racial animus, it demonstrated its continued discriminatory purpose.

The defendants' evidence about the 1929 Act "paints a vivid picture of [a] troubling history." *See Barcenas-Rumualdo*, 53 F.4th at 866; *accord*, *e.g.*, *United States v. Machic-Xiap*, 552 F. Supp. 3d 1055, 1066-68 (D. Or. 2021) (making detailed findings of racial bias behind 1929 Act). Like the district court, we will assume that the 1929 Act rests at least in part on "underlying racist motivations." J.A. 1042. But we also agree with the district court – and the other three courts of appeals to consider the question – that the ugly origin of the 1929 Act is not enough to overcome the presumption that 1952's Congress enacted § 1326 in good faith and without racially discriminatory intent.

First, to the extent the defendants argue that the motivations for the 1929 Act may automatically be imputed to the 1952 Congress – at least without some "repudiation" by that Congress – we must disagree. That position is foreclosed by the Supreme Court's decision in *Abbott*, clarifying that a finding of past discrimination does not by itself overcome the presumption of good faith, and that a future legislature has no "duty to purge its predecessor's allegedly discriminatory intent." 585 U.S. at 605-06; *see also Raymond*, 981 F.3d at 303-05 (applying *Abbott* to reject similar argument). As the Ninth Circuit explained in *Carrillo-Lopez*, the defendants' near-singular reliance on the 1929 Act is fundamentally at odds with *Abbott*: The Supreme Court has "rejected the argument that a new enactment can be deemed to be tainted by the discriminatory intent motivating a prior act unless legislators expressly disavow the prior act's racism." 68 F.4th at 1151; *see also*

17

*Barcenas-Rumualdo*, 53 F.4th at 866 (explaining that the 1952 Act, not the 1929 Act, is "our point of reference").

This does not mean, to be sure, that the origins of the 1929 Act – which, again, we assume are tainted by racial animus – are irrelevant to the *Arlington Heights* analysis. *See Abbott*, 585 U.S. at 607. Instead, as we recently explained in *Raymond*, a prior legislature's discriminatory intent is appropriately considered as part of the *Arlington Heights* "historical background" factor. 981 F.3d at 305.[4] But under the circumstances here, we agree with the district court that the intent behind the 1929 Act is of limited probative force when it comes to the intent of 1952's Congress in passing § 1326. *See Carrillo-Lopez*, 68 F.4th at 1151 (finding that 1929 Act history lacks significant "probative value" for determining motivation of 1952 Congress).

Perhaps most important, there is the substantial chronological gap between the legislative act directly at issue – 1952's enactment of § 1326 – and the 1929 Act. "The INA was enacted 23 years after the 1929 Act, and was attributable to a legislature with 'a substantially different composition,' in that Congress experienced a more than 96 percent

---

[4] For this reason, we see no inconsistency between our approach and separate opinions in *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2274 (2020) (Alito, J., concurring), and *Ramos v. Louisiana*, 140 S. Ct. 1390, 1410 (2020) (Sotomayor, J., concurring), emphasizing the racist past of certain provisions. *See Carrillo-Lopez*, 555 F. Supp. 3d at 1026-27 (relying on those opinions). Assuming those cases, which do not involve equal protection challenges or the *Arlington Heights* framework, are relevant here, *but see*, *e.g.*, *Barrera-Vasquez*, 617 F. Supp. 3d at 409, these separate opinions stand simply for the proposition that the 1929 Act's underpinnings are relevant to the inquiry into § 1326 – a proposition already accounted for by the *Arlington Heights* historical background factor. *See United States v. Hernandez-Lopez*, 583 F. Supp. 3d 815, 822-23 (S.D. Tex. 2022).

turnover of its personnel in the intervening years." *Id.* at 1150 (quoting *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2349 n.22 (2021)).  Historical evidence so far removed in time can shed only limited light on the motivations of a very different Congress in 1952.  *See Barrera-Vasquez*, 617 F. Supp. 3d at 408 ("The Court . . . [is] unpersuaded . . . that the [1929 Act's] history explains why the 82nd Congress passed § 1326 some twenty-three years later." (cleaned up)).  By way of comparison, the Supreme Court in *Abbott* and our court in *Raymond* considered legislative action that followed prior discrimination by only a few years, and *still* found that historical background insufficient to overcome the presumption of legislative good faith.  *See Abbott*, 585 U.S. at 607-08; *Raymond*, 981 F.3d at 305.

The defendants attempt to bridge the lengthy gap between 1929 and 1952 by claiming that the 1952 Congress simply "recodified" or "reenacted" the 1929 Act.  Although it is not fully spelled out by the defendants, the theory seems to be that a plain reenactment of an existing statute carries forward prior racial animus in a way that reenactment with substantive changes would not.  *See Carrillo-Lopez*, 555 F. Supp. 3d at 1017-19 (adopting argument).  Whatever the merits of this theory – which appears to rest on a one-sentence caveat from the Supreme Court's *Abbott* opinion, *see* 585 U.S. at 604 ("Nor is this a case in which a law originally enacted with discriminatory intent is later reenacted by a different legislature.") – it has no application here, because § 1326 is not in fact a "simple recodification" of the 1929 Act.

The INA, of course, was not a "reenactment of the 1929 Act, but rather a broad reformulation of the nation's immigration laws." *Carrillo-Lopez*, 68 F.4th at 1151 (internal

19

quotation marks omitted).  And even if we narrow our focus to § 1326 itself, that provision had three predecessor statutes, not one, and incorporated from each of them while making substantial revisions and additions.  *Id.*  Most notable, perhaps, is the addition of the "found in" language, establishing a new continuing offense.  *See* 8 U.S.C. § 1326(a)(2).  But there are other changes, too.  *See United States v. Viveros-Chavez*, No. 21CR665, 2022 WL 2116598, at *5 (N.D. Ill. June 13, 2022) (cataloging substantive differences).  The two statutes certainly cover the "same subject matter" – but the same, of course, could be said about the two redistricting plans at issue in *Abbott*, *see id.* at *6, or the two voter-ID requirements at issue in *Raymond*.

Finally, as the Fifth Circuit emphasized, the clock does not stop in 1952.  *See Barcenas-Rumualdo*, 53 F.4th at 866.  Congress has amended § 1326 multiple times since its original enactment, most recently in 1996, and the defendants do not meaningfully contend that any of those later congressional actions was based on racial discrimination.  On the contrary, the district court found that other factors, including "economic factors, [] labor market factors, [and] national security factors," were the overriding concern for Congress "into 1952 and beyond," as it continuously refined § 1326.  J.A. 1044.  "The further removed that § 1326 becomes from [the 1929 Act] by amendment, the less it retains its odor."  *Barcenas-Rumualdo*, 53 F.4th at 866.[5]

---

[5] Under *Arlington Heights*, if the defendants could carry their burden of showing that § 1326 was motivated in part by racial animus, the burden would shift to the government to prove that "the same decision would have resulted even had the impermissible purpose not been considered."  429 U.S. at 270 n.21.  The government argues that the repeated amendments of § 1326 without indicia of discrimination allow it
(Continued)

2.

Although the defendants rely principally on the 1929 Act to show an impermissible purpose behind § 1326, they also allude to other aspects of § 1326 to support their case. Accordingly, with the role of the 1929 Act established, we turn to whether the presumptively racial origins of that Act, now combined with other evidence relevant under the *Arlington Heights* factors, is enough to overcome the presumption of good faith and show that § 1326 itself was passed for racially discriminatory reasons. The district court held that the defendants had not made this showing, and we see no clear error in that judgment.

Neither the sequence of events leading up to the INA's passage nor the INA's legislative history provide any direct evidence of discriminatory intent behind § 1326. As noted above, the congressional debate over the INA primarily focused on national-origin quotas—quotas to which Mexican and Central American immigrants were not subjected. *See Carrillo-Lopez*, 68 F.4th at 1146-47 & n.8. As a result, there was no discussion of how § 1326 would affect those populations. *See id.* at 1146. And as the defendants' own expert emphasized, the legislative history contains no substantive mention of § 1326's illegal reentry provision at all, J.A. 933 – let alone any discussion evincing a racially discriminatory purpose. By all appearances, Congress never even considered what effect

---

to satisfy this burden. *See, e.g.*, *Barrera-Vasquez*, 617 F. Supp. 3d at 411-12 (adopting argument). Because we agree with the district court that the defendants cannot make the initial showing necessary to shift the burden of proof to the government, we need not pass on this alternative argument.

21

§ 1326 might have on the Mexican and Central American immigrants the defendants claim it targeted because of their race. *See Carrillo-Lopez*, 68 F.4th at 1146 ("There was no discussion of [§ 1326's] impact on Mexicans or other Central and South Americans.").

The defendants thus turn, once again, to a different law, this one enacted a few months before the INA: an anti-harboring law targeting those involved in transporting and otherwise facilitating the entry of non-citizens into the United States without authorization, *see* Act of Mar. 20, 1952, Pub. L. No. 82-283, 66 Stat. 26 (1952), colloquially referred to as the "Wetback Bill." That is indeed a noxious formulation, especially by modern lights. But like the other courts of appeals to consider this evidence, we think the fact that "individual lawmakers dubbed a bill something derogatory" – even deeply so – does not significantly bear on the motivations of the entire Congress in enacting a different law. *See Barcenas-Rumualdo*, 53 F.4th at 867; *see also Carrillo-Lopez*, 68 F.4th at 1149 n.13 ("[I]ndividual lawmakers' name for a separate bill is not sufficient evidence to meet [the defendant's] burden of showing that Congress acted with racial animus when it enacted § 1326."). So, too, with the equally regrettable use of the slur "wetback" by a handful of members of Congress in debate over the INA. While a disturbing reflection on the kind of language that was tolerated in Congress at the time, these comments are not "evidence that the legislature as a whole was imbued with racial motives." *See Brnovich*, 141 S. Ct. at 2349-50.

Finally, the defendants rely on expert testimony that § 1326 has a disparate impact on Mexican and Central American immigrants. *See* J.A. 469-70; *Arlington Heights*, 429 U.S. at 265-66 (discussing relevance of disparate impact evidence). But there is nothing

surprising – or more to the point, suspicious – about the fact that an illegal reentry provision bears most heavily on populations with whom this country shares a several-thousand-mile border. As multiple courts have recognized, "any disparate impact" in § 1326 prosecutions is readily "explained by the geographic proximity of the border to Mexico and Latin America." *See Barrera-Vasquez*, 617 F. Supp. 3d at 411 (internal quotation marks omitted).

And because there is an obvious explanation for this disparate impact, it does little, if anything, to suggest a racially discriminatory motive. Disparate impact evidence is relevant not for its own sake, but because a "clear pattern, *unexplainable on grounds other than race*," may give rise to an inference of discriminatory intent. *Arlington Heights*, 429 U.S. at 266 (emphasis added); *see also Personnel Adm'r. of Mass. v. Feeney*, 442 U.S. 256, 275 (1979) (same). But here, the "clear geographic reason for disproportionate impact on Mexicans and other Central and South Americans undermines any inference of discriminatory motive." *Carrillo-Lopez*, 68 F.4th at 1153.

All told, we agree with the district court and the other courts to have considered this question. The 1929 Act notwithstanding, Congress's 1952 passage of § 1326 is entitled to a presumption of legislative good faith. *See Raymond*, 981 F.3d at 303. Indeed, as the district court noted, 1952's INA had a distinctly "antiracist component," J.A. 1043, eliminating racial bars to naturalization and other forms of racial discrimination in admissions. *See Carrillo-Lopez*, 68 F.4th at 1144-45; *Machic-Xiap*, 552 F. Supp. 3d at 1069 ("Many in Congress viewed the INA as a dramatic departure from the heavily racialized immigration statutes of the early 1920s."). Against this background, and for the

23

reasons discussed above, we conclude that the defendants have not met their burden of demonstrating that discrimination based on race was a motivating factor behind enactment of § 1326.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*